## JIM CRAIG V. THE STATE.

*No. 3254. Decided February 3.*

1. **Murder—Evidence—Declarations Made by Defendant when Ostensibly Under Arrest.**—If a defendant who has committed a homicide be met by parties with guns who are hunting for him, and who do not intend to allow him to escape, but who have not arrested him, and defendant, who has no reasonable grounds to believe himself under arrest, makes a voluntary statement to them as to the circumstances of the killing, such statements, he not believing himself in arrest, are admissible in evidence against him.

2. **Same—Cases Distinguished.**—As to the above ruling, see a distinction made as to the facts in this case and the facts in the cases of Nolan v. The State, 8 Texas Court of Appeals, 595; Nolan v. The State, 9 Texas Court of Appeals, 425; and Grosse v. The State, 11 Texas Court of Appeals, 364.

3. **Declarations and Statements Res Gestæ, when.**—The declarations, admissions, and statements of a party, to be admissible as *res gestæ*, should be contemporaneous with the transaction. If the declarations appear to spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and made at a time so near to it as to preclude the idea of design, then they are to be regarded as contemporaneous.

4. **Same.**—Where the rencounter which resulted in the killing occurred about 11 o'clock at night, and defendant immediately thereafter mounting his horse and riding rapidly away within ten minutes' time reached his father's house, and entering his mother's room was found covered with blood from a wound in the left side of his head, which was still bleeding profusely, and he was nauseated, weak, and sick, and complained of his head, *held*, that his statements and declarations made to his mother while she was dressing his wound were admissible as part of the *res gestæ*, and also as corroborative of his own testimony, when proof had been introduced to impeach him.

5. **Same—Declarations when not Admissible as Explanatory.**—Declarations and statements are not admissible in evidence to explain previous statements and declarations when such previous declarations and statements are full and complete and there is nothing left in doubt concerning them.

APPEAL from the District Court of Hood. Tried below before Hon. C. K. Bell.

On an indictment charging him with murder in the second degree for the killing of one Manuel Cavasas, appellant was convicted of manslaughter, with punishment assessed at three years in the penitentiary. The killing occurred at a dance, about 11 o'clock at night, on Monday, 21st day of September, 1891, near Fort Spunky, in Hood County, Texas. It originated in defendant having said that a third party, who was at the dance, was drunk. This was disputed by the deceased, who called the defendant "A G—d-damned liar." At this the parties got together, and in a very short time deceased staggered from defendant and fell to the ground. As he fell defendant said, "Maybe you want to hit me with another rock." Deceased said, "Oh, me! I am killed!" Defendant said, "I guess not. I only stabbed him three times." Defendant then got on his horse and rode off in a lope. Deceased was a

larger man than defendant, and could handle him in a scuffle.    All the parties who were present at the difficulty were friends of the deceased; defendant had no friend there.    Defendant reached his father's house in about ten minutes after he left the scene of the homicide, and was weak, bloody, and nauseated from a severe wound in the head, which was still bleeding profusely, and he detailed the circumstances of the difficulty to his mother while she was dressing the wound.    On the following morning, while some parties with guns were out hunting for defendant to arrest him, they came across the defendant, and without his knowing their purpose and intent to arrest him he made certain statements to them with regard to the difficulty, which they were permitted at the trial to testify to over his objections, his contention being that these statements were inadmissible, because at the time they were made he was virtually, if not in fact, under arrest.    The further statement of the case is deemed unnecessary.

*Russell, Cooper & Lemmon*, for appellant, filed an able brief in the case.

No brief on file for the State.

HURT, JUDGE.—This is a conviction for manslaughter, with the penalty fixed at three years in the penitentiary.

Over objection, the State introduced in evidence the confessions of defendant made to Sue, Sawyer, and Page.    The statement or confession was made to these parties next morning after the cutting which resulted in the death of Manuel Cavasas.    The objection urged was, that defendant was in arrest, and had not been cautioned as the law requires.    The appellant was not cautioned.    Was he in arrest, within the meaning of the statute?    The facts are as follows:    Sue states, that he, Sawyer, and Jim Page left home early that morning to hunt defendant.    They went to another neighborhood, where another party, in charge of a constable, were also to go in search of defendant.    Arriving at said place, they learned that the *posse* had gone on a similar mission to theirs.    They went toward defendant's father's house for the purpose of finding defendant.    They were on horseback, and had one gun with them.    In about 200 yards of defendant's house they saw him going along the cross-road leading to Smith's place.    They rode up to him, and spoke to him.    The defendant stopped.    They did not make any arrest or tell defendant he was under arrest, but their purpose was to take him to Fort Spunky to the justice.    If the defendant had attempted to leave them, they would not have permitted him to do so.    Do these facts show that defendant believed himself in arrest?    Were they calculated to induce such belief?    If defendant had reasonable grounds to believe and did believe himself in arrest, then his

confession was inadmissible. On the other hand, if he did not so believe, his confession was admissible, though Sue, Sawyer, and Page intended an arrest, and would not have permitted him to escape. Did he believe himself in arrest? He certainly did not, because there was nothing said or done which was at all calculated to produce such belief. We must infer, he being a man of ordinary intelligence, that he had no such belief. In support of the proposition that the facts show an arrest, counsel cites Nolan v. The State, 8 Texas Ct. App., 595; 9 Texas Ct. App., 425; and Grosse's case, 11 Texas Ct. App., 364. When the facts in these cases are examined, they will be found quite different to the facts in this case. There was no error in admitting the statements.

The cutting occurred about 11 o'clock at night. Appellant mounted a horse immediately, and rode rapidly to his father's house, about a mile away. He arrived there "about 11 o'clock, or between 11 and 12." He came into his mother's room all covered with blood, which came from a severe wound on the left side of his head. It was still bleeding profusely. His face and front were bloody, and he was weak, sick, and nauseous, and complained of his head. His mother commenced dressing the wound. These facts being shown, the defendant then proposed to show by his mother his version of the difficulty. The State objected, because, we presume, that appellant's statements to his mother constituted no part of the *res gestæ*. The ground is not stated in the bill. The objection was sustained. Was the statement made to his mother, under the above circumstances, admissible as original evidence? If not, was it admissible to explain the statement made by defendant to Sue, Sawyer, and Page? Was it admissible, under the facts of this case, for the purpose of corroborating defendant's evidence on the trial? Was the statement original evidence?

Just when a fact or statement is or is not a part of the *res gestæ* is one of the most difficult questions to solve known to the writer. The old rule was, that to be part of the *res gestæ* the fact or statement should be contemporaneous with the transaction, and this rule is approved by many courts of the first ability. On the other hand, the rule has been construed so as to admit acts and declarations occurring not contemporaneously with the transaction, but which precede or follow it. "And when they are to be admitted or rejected, if not coincident with the act or transaction in question, is a question of judicial discretion of embarrassing nicety. If the declarations appear to spring out of the transaction, if they elucidate, if they are voluntary and spontaneous, and made at a time so near to it as reasonably to preclude the idea of design, then they are to be regarded as contemporaneous." Mitchum v. The State, 11 Ga., 615. This rule is supported by the following authorities: The State v. Wagner, 61 Me., 173; Comfort v. The People, 54 Ill., 404; Denton v. The State, 1 Swan, 279; Crookham v. The State,

5 W. Va., 513; Handy v. Johnson, 5 Md., 450; Goodwin v. Harrison, 1 Root, 80.

The rule we may understand, but in its application the difficulties arise. If appellant continued the gait in which he started from the place of the cutting, he must have reached home within ten minutes. When he reached home he was covered with blood from a wound on the left side of his head, still bleeding profusely. He was weak, sick, and complained of his head. These are the surrounding facts when he made a statement regarding the transaction to his mother. We are of opinion that the declarations to his mother spring out of the transaction. They certainly were calculated to elucidate it. Do they appear to have been spontaneous, and not fabricated? They were made while he was bleeding profusely. He was sick and nauseated from the wound. The statement was made within ten minutes of the cutting. Under these circumstances, do they appear to have been made spontaneously? We think so. In the McPike case, 3 Cushing, 181, the defendant ran from her room, in the night, up stairs, bleeding, and crying "Murder!" The woman to whose room she fled went for a physician. Another person who heard her cries went for a watchman, and returning, went to her room and found her bleeding upon the floor. She told him the defendant had stabbed her. This statement was permitted to go to the jury, over objections of defendant. It will be observed that the declarations were not contemporaneous, but a considerable time must have elapsed between the time when the act was committed and that when the declarations were made; but the screams of the injured woman, her running into another room, her being found bleeding upon the return of the person who went for the watchman, all formed connecting links, and rendered the declarations equally as satisfactory as if they had been made at the time the wound was given. Harriman v. Stowe, 57 Mo., 93. In this case we have the application of the rule to a certain state of facts, and when the facts in this case before us bearing upon and surrounding the defendant when he related the transaction to his mother are compared to those in the McPike case, they will be found in the main to correspond, and to bring the case within the rule. That the declarations need not be contemporaneous with the transaction is settled, not only by this court, but by our Supreme Court. Were the statements made to his mother admissible to explain the statements made to Sue, Sawyer, and Page? We think they were not. Why? Because the statements to Sue and the others were full and complete. There was nothing left to doubt; hence there was nothing to be explained. We have very carefully compared the statements to Sue and the others with the facts bearing upon the subject contained in the cases cited by appellant, and are clearly of the opinion that they are dissimilar, and do not bring the statements within the provisions of the statute.

Was the statement to his mother admissible, under the facts of this case, for the purpose of corroborating the defendant's own testimony on the trial? The rule upon this subject is, that where the opposing case is that the witness (appellant in this case) testified under corrupt motives, or when the impeaching evidence (in this case that of Sue and others) goes to charge the witness (appellant) with fabrication of his evidence, it is but proper that such evidence should be rebutted; and hence statements made by the witness corroborating his testimony on the trial, uttered soon after the transaction, and at a time when the witness could not have been subject to any disturbing influences, are competent when proof has been offered to impeach him. What is the State's case on this question? Evidently that appellant's testimony on the trial was fabricated, and this attempted to be shown by proof of quite a different statement made by appellant next morning after the difficulty, to Sue, Sawyer, and Page. To refute this, should not appellant have been permitted to prove, that within fifteen minutes after the cutting he made a statement to his mother similar to that he related on the stand? We think so. Again, how natural for the jury to give to his evidence very slight weight, and to discredit it altogether when impeached, as was done in this case. Would it not be reasonable for the jury to view his testimony more favorably if they knew that he gave the same account of the transaction soon after it occurred? Of this we entertain no doubt, and hence are of opinion that this statement to his mother, under the circumstances of this case, was admissible for the purpose of corroborating his testimony given at the trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, J., absent.