WALTER HARDIN V. THE STATE.

No. 4573.    Decided March 20, 1909.

**1.—Perjury—Evidence—Collateral Fact.**

Upon trial for perjury where the defendant was charged with falsely swearing that he killed deceased in a certain homicide with which defendant's brother was charged, the prosecution could show that the defendant did not do the killing, while the defense could show that he did.

**2.—Same—Evidence—Cross-Examination.**

Where upon trial for perjury the State was permitted to prove the relative size and strength of certain parties engaged in the homicide out of which the charge of perjury arose, it was permissible for the defense to introduce similar testimony on cross-examination.

**3.—Same—Evidence—Other Transactions.**

Upon trial for perjury where the defense claimed that the defendant and not his brother committed the homicide out of which the perjury arose, it was error to permit the State to show that after the officer had arrested defendant's brother for said homicide, some one handed the officer a knife, without showing that the latter had used such knife.

**4.—Same—Evidence—Irrelevant Testimony.**

Upon trial for perjury which arose out of a certain homicide in which the State claimed that the brother of the defendant and not the defendant did the killing, and the defense claimed that the defendant did it, it was error to permit the State in order to establish the killing as claimed by the State to show that a certain State's witness owned a knife and missed the same about two weeks before the killing; there being no testimony that the brother of the defendant ever had this knife in his possession.

**5.—Same—Evidence—Bill of Exceptions.**

Where upon appeal from a conviction of perjury the bill of exceptions showed that the State had been permitted to introduce testimony, in order to establish the fact that defendant's brother and not the defendant had committed a certain homicide out of which the perjury arose, why certain witnesses in said murder trial left the State, without connecting the matter up properly to show its relevancy, the same was error.

**6.—Same—Impeaching Witnesses.**

Upon trial for perjury wherein it was claimed by the State that the defendant falsely swore that he and not his brother committed a certain homicide, the fact that defendant was tried for simple assault upon the person killed in said homicide could not legitimately be used by the State to prove that defendant swore falsely when he said that he killed such person.

**7.—Same—Evidence—Credibility of Witness.**

Where upon trial for perjury growing out of a certain homicide wherein the State claimed that the defendant falsely swore that he and not his brother committed the same, there was no error on cross-examination of defendant's brother to show that the latter had been three times tried and twice convicted on the charge of said homicide, the court in his charge properly limiting this testimony to the credibility of said witness.

**8.—Same—Evidence—Controverted Judgment.**

Upon trial for perjury growing out of a certain homicide wherein the State claimed that the defendant falsely swore that he and not his brother did the killing, it was error to permit the State to·show that the defendant was tried for simple assault growing out of the difficulty which resulted in said homicide.

**9.—Same—Impeaching Witnesses.**

Upon trial for perjury where the State claimed that the defendant had falsely sworn that he and not his brother committed a certain homicide, there was no error in the State's effort to impeach the testimony of defendant's witnesses by showing that they swore differently with reference to said homicide in a certain assault case growing out thereof; the court properly limiting said testimony.

**10.—Same—Evidence—Irrelevant Testimony.**

Where upon trial for perjury in which the State claimed that the defendant falsely swore that he and not his brother committed a certain homicide, the State had been erroneously permitted to show that defendant was prosecuted for a simple assault, the defendant should have been permitted to show that such case of assault had been dismissed before he testified in the homicide case in which his brother was tried, and in which homicide case defendant swore that he did the killing.

**11.—Same—Evidence—Bill of Exceptions.**

Where upon trial for perjury the State on cross-examination of defendant attempted to show that the defendant made other statements than those he made on his trial and which agreed with the theory of the prosecution that he had sworn falsely with reference to committing a certain homicide, and the bill of exceptions did not show what the answer of defendant to the State's question would have been, the same could not be considered on appeal. However, it was permissible for the State to show that defendant had made different statements than those he made on his trial.

**12.—Same—Evidence—Cross-Examination—Defendant as Witness.**

Upon trial for perjury wherein the State claimed that the defendant had falsely sworn that he and not his brother committed a certain homicide, it was error to permit the State on cross-examination of defendant's brother who testified that defendant and not he committed the homicide, to ask said witness whether he had ever testified in his own case wherein he was charged with said killing.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Wear.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary

The opinion states the case.

*Ivy, Hill & Greenwood,* for appellant.—On question of admitting the testimony of the opinion of grand and petit juries, officers and other persons as to the guilt or innocence of the defendant, etc.: Cecil v. State, 44 Texas Crim. Rep., 450; Denton v. State, 46 Texas Crim. Rep., 193; Underwood v. State, 39 Texas Crim. Rep., 409; Bennett v. State, 39 Texas Crim. Rep., 639; Poole v. State, 45 Texas Crim. Rep., 348; Tillery v. State. 24 Texas Crim. App., 251.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of perjury, and his punishment assessed at two years confinement in the penitentiary.

The facts in this case are, in substance, as disclosed by the opinion in the case of Richard Hardin v. State, 51 Texas Crim. Rep., 559. In that case appellant's brother was prosecuted for murder and convicted of manslaughter. On the trial of that case appellant swore, in substance, that he killed the deceased, and not his brother Richard. The perjury in this case is predicated upon said alleged false statement. In other words, appellant and his brother were in the difficulty with the deceased, Munroe, and one or the other of them stabbed the deceased, from which wound he died. Several witnesses swear that appellant cut the deceased; several witnesses swear that Richard Hardin (appellant's brother) cut the deceased. In order to prove the falsity of appellant's testimony, wherein he swore that his brother Richard did not cut the deceased, it was proper and germane for the State to introduce any legitimate and legal evidence going to show that Richard Hardin, and not appellant, cut the deceased. It was equally proper and permissible for appellant to introduce any evidence that was legal to show that he, and not his brother, killed the deceased.

Bill of exceptions No. 1 shows that the State's witness, Albert Smith, testified that Richard Hardin stuck a knife in the deceased. The evidence of other witnesses for the State show that Richard Hardin stabbed deceased in a difficulty occurring at night in Itasca. Witnesses for appellant testify that it was appellant who stabbed deceased. Sam Shaw, a witness for the State, had testified that in the difficulty in which Prince Munroe was killed, that Maje Wright a few moments before had knocked deceased down. Other evidence was to the effect that Maje Wright was a small man, weighing about 135 or 140 pounds. On cross-examination of Albert Smith he was asked in behalf of defendant how large a man was Prince Munroe, the deceased. Appellant expected to prove by said witness that deceased was a large man, weighing about 180 pounds, but the testimony was objected to by the State and the objection sustained.

Bill No. 2 shows that the defense offered to prove by Albert Smith that deceased knocked Maje Wright down, and the witness would have so testified. This testimony should have been admitted. It may be meager in its effect upon the trial of this case, but certainly if it is pertinent for the State to prove that Smith knocked the deceased down, then it certainly was admissible for the defense to prove that deceased knocked Smith down.

Bill No. 3 shows that J. A. Martin, the constable at Itasca, testified that he learned of the killing of the deceased a few minutes after it occurred; that he overtook and found Richard Hardin with the Johnson girls about a mile west of Itasca and brought him back to Itasca, and when he got him back to Itasca and put him in the calaboose he saw what he took to be blood in the palm of his hand.

That Mr. Wheeler and Clevis Wheeler, his son, lived west of Itasca about a mile and a half. Counsel for the State thereupon asked the witness Martin the following question: "After the difficulty, I will ask you if anyone turned over to you a knife?" Appellant objected to this on the ground that it was immaterial and prejudicial to defendant; that it was a transaction inter alia and could not be binding on defendant, there being nothing showing any connection between Richard Hardin and said knife, and Richard Hardin not being present. The bill shows that Richard Hardin was not seen with the knife, or that he ever owned the knife in question. . Certainly this testimony was entirely inadmissible.

Bill No. 4 shows that Ben Majors, witness for .the State, testified that Richard Hardin .lived on his place before and at the time of the killing of Prince Munroe, and he was asked the following question by the State: "I will ask you whether about that time or before you heard of the death of Prince Munroe and while Rich Hardin was living on your place whether you owned a knife or not?" The defense objected on the ground that same was immaterial, irrelevant and hearsay. The objections being overruled, the witness answered, "Yes, I owned a knife." The State then asked witness whether he missed that knife, to which he answered: "Yes, I missed it about two weeks before I heard of the killing." In this connection the witness testified that the last time he saw the knife before he missed it he had it in his buggy shed cutting washers for his buggy. If this testimony was pertinently connected or the knife could be even inferentially shown to have been in possession of the brother of defendant, Richard Hardin, the testimony would be adm˙s:ble; but as the bill discloses the matter we see nothing on earth to connect appellant with the knife or his brother Richard Hardin with the knife. It follows, therefore, that this character of testimony should not be admitted against this appellant at least.

Bill No. 5 ˉshows that the State was permitted to prove by the ticket agent at Itasca that sometime ago Mr. Wheeler (father of Cleve Wheeler) bought tickets for Mississippi, and shipped as freight a lot of household furniture to Mississippi. This evidence was introduced for the purpose of showing that Mr. Wheeler and Clevis Wheeler had left the State of Texas. Appellant objected to this testimony on the ground that same was irrelevant and immaterial. It certainly was utterly irrelevant and immaterial. If these parties had been witnesses in Richard Hardin's case and the defense had made an assault upon the State's bona fide effort to produce all the evidence showing that Richard Hardin had killed deceased, and not· appellant, we could imagine some circumstances under which it might be pertinent for the court to permit the State to show why the Wheelers were not introduced as witnesses. This bill does not disclose any such condition as that suggested, and the testimony was utterly irrelevant and immaterial.

Bill No. 6 shows that the State introduced the depositions of J. J. Scrivner given on a former trial of Richard Hardin, showing in substance that Mr. Wheeler and his son, Clevis Wheeler, had left the State of Texas. As stated above, this testimony was not admissible

On cross-examination of the witness Maje Wright, the State was permitted, over appellant's objection, to prove by said witness that Walter Hardin, appellant herein, after the killing of deceased, was tried in the Justice Court at Itasca for a simple assault on Munroe, growing out of the difficulty in which Munroe was killed, and that the witnesses in this case on trial testified on the trial at Itasca of Walter Hardin for such simple assault; and that witness heard them testify, and never heard a single one of the witnesses swear that Walter Hardin stuck that knife in deceased, and that they all testified, and that witness knew they all testified that time in Itasca, that Richard Hardin stabbed Munroe, and not Walter Hardin. This bill does not show whether the State laid a predicate to impeach all the defense witnesses or not. We have to take the bill as it is written. If as a matter of fact the State laid a proper predicate by the witness to impeach various witnesses testifying for the defense, then it would be proper after laying said predicate to ask the witness the question complained of in this case. In other words, various witnesses swore in this case that appellant killed the deceased. If these same witnesses in a case wherein appellant is being prosecuted for assault upon deceased had previously sworn that appellant did not assault deceased, this fact could be proven; this regardless of whether it was in the trial for assault or any other case. If testimony of this character is admitted, however, it should be limited to the sole purpose of impeaching the defense witnesses. The fact that appellant was tried for assault upon deceased could not legitimately be appropriated or used by the State to prove that he swore falsely when he says that he killed the deceased. Appellant is not responsible for the character of indictment returned against him.

Bill No. 11 shows that the State, on cross-examination of the defense witness, Richard Hardin, was permitted to prove, over appellant's objection, that he had been three times tried and twice convicted on the charge of killing deceased. Appellant objected on the ground that same was immaterial, irrelevant, incompetent and prejudicial. That defendant should be held responsible for the fact that Richard Hardin had been three times tried for killing Prince Munroe, and was not responsible for the fact that juries had twice convicted Richard Hardin; that said evidence, in effect, introduced before the jury the verdicts of two juries convicting Richard Hardin for the stabbing and killing of Munroe, and in effect was the opinions of said juries that Richard Hardin, and not Walter Hardin, stabbed Munroe (the deceased), the issue in this case being whether Richard Hardin or Walter Hardin stabbed and killed deceased. It

appears from the charge that the court limited this testimony to the issue of credibility of the witness Richard Hardin. We think there was no error in this ruling of the court. See Early v. State, this day decided.

Bill No. 14 shows that the State was permitted to prove that appellant was tried in the Justice Court at Itasca for simple assault on Prince Munroe, growing out of the difficulty in which Munroe (deceased) was killed. Appellant objected to this testimony on the ground that it involved no moral turpitude, and the fact that he was charged only with a simple assault on Munroe and tried for such simple assault instead of being charged with killing Prince Munroe, involved the opinion of the grand jury or officers or parties charging him with simple assault on Munroe, deceased. Appellant could not be chargeable with the fact that the officers over whose acts and conduct he had no power or control had prosecuted him for simple assault on deceased; even if appellant was convicted of a simple assault it does not involve, as suggested in the bill, moral turpitude, nor does it go to show per se that appellant swore falsely when he stated he did not kill deceased. It is a well settled rule by this court that results of a controverted judgment can not be introduced as evidence in another and different case. See Dent v. State, 43 Texas Crim. Rep., 126, and Busby v. State, 51 Texas Crim. Rep., 289.

Bill No. 15 complains that the State impeached the testimony of appellant's witnesses on this trial by showing that they swore differently in the assault case. This testimony was admissible, if proper predicate was laid, and the court properly limited same in his charge to the jury.

Bill No. 16 shows that appellant offered to prove that the assault was appealed to the County Court from the Justice Court at Itasca, and was there dismissed against him, before he testified on the trial of the case against Richard Hardin, out of which this prosecution for perjury grew. Certainly, if it was permissible to prove that he was prosecuted, which we have heretofore held it was not, it would then have been admissible to prove that he was subsequently acquitted, or that the case was dismissed, but none-of this testimony was admissible.

Bill No. 17 shows that Walter Hardin (appellant) on cross-examination, was asked the following question: "You told Constable John Martin and J. J. Scrivner and Fred Long after this thing happened that you were not there (that is, at the place of the fatal difficulty wherein Prince Munroe was killed), and was gone before the difficulty occurred?" Appellant objected on the ground that he was under arrest, and on preliminary questions by counsel for defense, it appearing that said witness Walter Hardin (defendant) was under arrest, the defense objected as follows: "Objects to testimony to show that he stated to these parties while he was under arrest,

thereupon the court remarked: 'Unless it is shown that he was warned, I don't know that they are going to show that he was warned.' This proceeding occurred in the presence of the jury and under said remarks of the court there was no answer to said question asked by the State." Furthermore, the State was permitted to prove by said Walter Hardin that he shortly after the fatal difficulty resulting in deceased's death, was charged with and tried for simple assault growing out of said difficulty. On cross-examination of Walter Hardin by defendant's counsel the following question was propounded: "I will ask you whether or not prior to the time, between the time you was arrested and the time you were tried in Itasca and before you heard the evidence up there, if you told anyone who killed Prince Munroe?" The witness answered, "Yes, sir." The State objected to this as self-serving and hearsay, and the court sustained the exception. If permitted to answer the witness would have stated that he told W. R. Carr before the trial in the Justice Court at Itasca for simple assault that he stabbed and killed Munroe. In the shape of this bill we can not say whether the testimony was admissible or not. As we understand this bill there was no answer made by the defendant to the State's question as propounded above. We have copied the bill almost literally. If the State proved that appellant made different statements from those sworn to on the trial of this case, then it would be permissible to show that the appellant made other statements in consonance with his statement here sworn to, but this bill does not disclose whether this was the condition or not.

Bill No. 18 complains of the same matter discussed in the last bill.

Bill No. 19 shows that after appellant's brother, Richard Hardin, had testified in this case that appellant, and not he, stabbed deceased, the State thereupon on cross-examination asked him whether he, the said Richard Hardin, had ever testified in his own case, wherein he was charged with killing Munroe (which has been tried three separate times). To which question the defense objected on the grounds that even if Richard Hardin never testified in his own case, it was immaterial, irrelevant, incompetent and prejudicial to defendant (Walter Hardin), as Richard Hardin had the legal right not to testify in his own case; that such fact could not be considered by the jury nor alluded to by the jury in determining the guilt of said Richard Hardin, and his failure to do so could not be considered as an inculpatory fact against him. This testimony was clearly inadmissible for any purpose.

We have carefully reviewed all of appellant's bills of exception, and for the errors pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*