## T. RAINS V. THE STATE.

No. 20826. Delivered February 21, 1940.
Rehearing Denied January 8, 1941.

The opinion states the case.

*Shead & Smith,* of Longview, and *Sam B. Hall* and *C. W. Field,* both of Marshall, for appellant.

*Fred Erisman,* Criminal District Attorney, and *Mike Anglin,* Assistant Criminal District Attorney, both of Longview, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder; the punishment, confinement in the penitentiary for two years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed George Batalis by shooting him with a gun.

The case was tried in Harrison County on a change of venue from Gregg County.

According to the testimony of the State, appellant killed deceased without provocation. Appellant gave testimony which raised the issue of self-defense.

Bill of exception No. 1 is concerned with the introduction in evidence of the declaration made by the deceased a few minutes before he died. It is shown in the bill that about five minutes after he had been shot deceased stated to the attending physician that he did not know why appellant shot him, and further said, "God forgive him." The bill, as prepared by the court, shows that the declaration was res gestae.

Bill of exception No. 2 complains of the action of the trial court in limiting the number of character witnesses for the appellant. It appears from the bill that after three witnesses had testified to appellant's good general reputation as a peaceable and law-abiding citizen the State admitted before the jury in open court that appellant's reputation in the respect mentioned was good up to the time of the trial. In view of this admission by the State, there was no error committed by the court in declining to let appellant go through the formality of having other character witnesses testify. Bowlin v. State, 248 S. W. 396.

It appears from bill of exception No. 3 that an assistant district attorney who worked with the grand jury that indicted appellant testified that appellant appeared before the grand jury, and, after due warning, "admitted the whole thing." Upon objection being made by counsel for appellant, the jury were promptly instructed not to consider the statement of the witness. In view of the instruction of the court, we are of opinion that the bill fails to present reversible error.

Bill of exception No. 5, as qualified, shows that the testimony set forth in said bill to which appellant objected was given by other witnesses without any objection upon the part of appellant. We quote from 4 Texas Jurisprudence, 587, as follows: "It is a general rule also that the admission of improper evidence

does not constitute reversible error if the same facts were proved by other and proper testimony or by evidence which was not objected to, * * *." See Trimmer v. State, 120 S. W. (2d) 265.

Bill of exception No. 7 presents the following occurrence: Appellant testified upon the trial that he did not tell the officers to whom he surrendered immediately after the homicide that he had seen a knife near the body of the deceased and had picked the knife up. He also testified that he had the knife in his possession when he voluntarily appeared before the grand jury which was investigating the case, and that he did not tell the grand jury about the knife, stating that he was not asked about it. The State introduced an assistant district attorney and members of the grand jury, all of whom testified that appellant was asked if he had seen a knife, gun or other weapon about the deceased at the time of the killing, and that appellant had stated before the grand jury that he did not see such weapon. The officers to whom appellant surrendered immediately after the homicide were also called as witnesses and they testified that when the appellant surrendered he gave up his gun, but that he did not mention to them that he had seen or had possession of a knife which he had obtained near the body of deceased. Appellant produced witnesses who testified that they had seen this knife or a similar knife in possession of the deceased prior to the homicide. The State introduced witnesses who worked for deceased and who testified that they had never seen such a knife in the possession of deceased. Appellant then offered to prove by the witness Orr that the next morning after the homicide he told Orr that he (appellant) obtained a knife near the body of the deceased and would show it to Orr sometime. The State's objection to this testimony was sustained. The purported conversation with the witness Orr was had the next day after the homicide and after appellant had been charged with murder and after he had made bond. In Browney v. State, 79 S. W. (2d) 311, the rule is stated as follows: "It is well settled that where a witness has been impeached by showing that he made other and different statements in regard to the matter than those testified to by him on the trial he can be supported by showing that he made similar statements to those testified to by him recently after the occurrence. However, if the supporting statement was made after a motive or inducement existed to fabricate, the supporting statement is then inadmissible." We think the record reflects the fact that there existed a motive to fabricate at the time the appellant made the statement to Orr. See Porter v. State, 50 S. W. 380,

Bill of exception No. 8 relates to the argument of the district attorney. As qualified, the bill of exception shows that the argument of counsel for the State was invited by the argument of appellant's counsel. See Nix v. State, 124 S. W. (2d) 386.

Failing to find reversible error, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing it is forcibly urged by appellant that we erred in our original opinion in holding that bill of exception number seven presented no error.

The bill reflects the following occurrence. Appellant had testified that he shot deceased in self-defense, and after he had fallen appellant picked up near deceased's body a large dirk, which was the knife exhibited to the jury. The State then proved by some of the grand jurors that while appellant was testifying before the grand jury he was asked whether or not he had seen a knife, gun or other weapon at the time of the killing, and appellant had replied that he had not. After this impeaching evidence was in appellant offered to prove by the witness Orr that appellant had told said witness that he had picked up a knife, and had it in his possession and would show it to Orr sometime. At the time appellant made said purported statement to Orr appellant had been charged by complaint with murder and had been released on bond. Under these circumstances the trial court excluded Orr's proffered testimony.

There is no uniformity in the holdings of the courts of different jurisdictions in regard to permitting a witness to be supported by statements consistent with his evidence on the trial where he had been impeached by proof of statements inconsistent with the evidence given by said witness. In some jurisdictions the supporting statement is excluded altogether; in others, proof of the supporting statement is admitted if made at a time prior to the inconsistent statement. See 70 C. C., Sec. 1136, with collation of authorities from many courts.

In our own State the holding on the subject has been consistent from the beginning, the only variance occurring sometime in the application of the rule in a particular case. The

rule itself as adopted by this Court is very clearly stated by Mr. Branch in his valuable Ann. Texas P. C., in Sec. 181, page 110, as follows, relating to the State's witnesses. "Where a *State's witness* is attempted to be impeached by showing that he has made statements with reference to the transaction out of court different from and contradictory to his testimony delivered on the present trial, it is not error to permit the State to support the witness by showing that shortly after the transaction, and before any motive or inducement existed to fabricate, he made statements of the matter similar to his testimony delivered on the trial." In the same section on page 111 the rule is stated as it applies to the defendant's witnesses, and reads as follows: "Where *defendant or his witness* has been impeached or sought to be impeached by proof of contradictory statements, it is error to refuse to permit defendant to sustain his own testimony or that of his witness by proof of statements similar to those testified to on the trial which were made shortly after the transaction and before any motive or inducement existed to fabricate." Many cases are cited supporting the rule in both instances.

In applying the principle where a defendant is the witness it must be remembered that this Court is committed to the proposition that when a defendant takes the stand as a witness he is subject to the same rules as any other witness. He may be cross examined, contradicted, impeached and sustained, the same as any other witness, unless there be some statutory limitation. Branch's Ann. Texas P. C., Sec. 147, 45 Tex. Jur., Sec. 309.

The reason why a supporting statement made by a witness after a motive to fabricate has arisen is held inadmissible is that to permit its use would be obnoxious to the "general rule that a party cannot make evidence for himself, either by his acts or his declarations." Shrivers v. State, 7 Texas Cr. App. 450.

Appellant relies largely upon Hudson v. State, 49 Texas Cr. R. 24, 90 S. W. 177, in support of his position that Orr's testimony was admissible. Exactly the same reliance on the Hudson case was had in Blackburn v. State, 78 Texas Cr. R. 177, 180 S. W. 268. After reference to the Hudson case the opinion in Blackburn's case proceeds as follows: "It has always been the rule in this State that when the State seeks to impeach a witness by proof of contradictory statements, he may support his testimony by showing that he had made similar statements to that he testified to on the trial. This is not only the rule announced in the Hudson case, supra, but it has been

so held in Williams v. State, 24 Texas App. 666, 7 S. W. 333; Craig v. State, 30 Texas App. 619, 18 S. W. 297, Campbell v. State, 35 Texas Cr. R. 163, 32 S. W. 774; Pitts v. State, 60 Texas Cr. R. 524, 132 S. W. 801, and cases cited in Branch's Crim. Law, 874. But the rule is equally well settled in this State that proof of statements made in harmony with his testimony made after the motive existed which would likely prompt him to testify falsely cannot be introduced to support his testimony on the trial. Conway v. State, 33 Texas Cr. R. 330, 26 S. W. 401; Sanders v. State, 31 Texas Cr. R. 529; 21 S. W. 258; Anderson v. State, 50 Texas Cr. R. 136, 95 S. W. 1037; Porter v. State, 50 S. W. 380. * * * In the Hudson case it is not made to appear that it was after Hudson had been charged with an offense that he made the statement held to be admissible, and if it did so appear it would not be in harmony with a long list of authorities in this State, and as announced in 7 Ency. of Ev. p. 286. See also, Barkly v. Copeland, 74 Cal. 1, 15 Pac. 307, 5 Am. St. Rep. 413; McCord v. State, 83 Ga., 521, 10 S. E. 437; Waller v. People, 209 Ill. 284, 70 N. E. 681; State v. Vincent, 24 Iowa, 570, 95 Am. Dec., 753; State v. Hendricks 32 Kan. 559, 4 Pac. 1050; State v. Fontenot, 48 La. Ann. 283, 19 South. 113; Commonwealth v. Jenkins, 10 Gray (Mass) 485; People v. Finnegan, 1 Parker Cr. R. (N. Y.) 147; State v. Exum, 138 N. C. 599, 50 S. E. 283; Commonwealth v. Brown, 23 Pa. Super. Ct. 470; State v. McDaniel, 68 S. C. 304, 47 S. E. 384, 102 Am. St. Rep. 661; Legere v. State, 111 Tenn. 568, 77 S. W. 1059, 102 Am. State. Rep. 781."

It is worthy of note that Judge Davidson, who wrote in Hudson's case, was still upon the court when the opinion in Blackburn's case was written, and apparently acceded to the statement that the Hudson case was out of harmony with the cases mentioned in the Blackburn opinion unless given the construction therein indicated.

In addition to the authorities cited in our original opinion and those collated in the opinion in Blackburn's case we cite the following upon the general rule that the supporting statement sought to be introduced in evidence must have been made before there was any motive on the part of the witness to fabricate. Ballow v. State, 42 Texas Cr. R. 263, 58 S. W. 1023; Browney v. State, 128 Texas Cr. R. 81, 79 S. W. (2d) 311; Williams v. State, 120 Texas Cr. R. 288, 49 S. W. (2d) 772; Bryan v. State, 121 Texas Cr. R. 285, 50 S. W. (2d) 298; Taylor v. State, 87 Texas Cr. R. 330, 221 S. W. 611; Naugle v. State, 118 Texas Cr. R. 566, 40 S. W. (2d) 92; Stoker v.

State, 118 Texas Cr. R. 524, 42 S. W. (2d) 72. It will be observed from examination of the authorities that the rule excluding the proof of supporting statements of a witness who has been impeached by proof of contradictory statements has consistently been applied regardless of whether the witness be a State's or an accused's witness. In other words, the rule of evidence is, and should be, the same whether it aids or harms the State or the accused.

We take it that after an accused has been charged by complaint with a crime and been released on bond, as was appellant in the present case, it would not be debatable that a motive existed which would prompt him to make statements favorable to his defense against the accusation. That one so charged with the commission of an offense becomes a witness in his own behalf upon the trial should not change the rule of evidence regarding contradictory or supporting statements. There is no statutory limitation regarding such evidence. If appellant should be here permitted to introduce in evidence the statement claimed to have been made to Orr for the purpose of supporting appellant's evidence on the trial after the State had proven the contradictory statement we would have one rule of evidence applying to witnesses for the State and another rule of evidence applying to witnesses for a defendant, or to a defendant when he becomes a witness for himself.

Such a condition would be most confusing, highly undesirable and improper.

For the reasons stated we adhere to the views expressed in our original opinion. The appellant's motion for rehearing is overruled.

GRAVES, Judge (Dissenting).

Appellant has filed a vigorous motion wherein he alleges we were in error when we held that the trial court was correct in excluding the proffered testimony of W. W. Orr relative to a purported conversation had with appellant the next morning after the alleged homicide. This matter was properly excluded by the trial court, so we herein held in the original opinion, because of the fact that same was self-serving and was made after a motive or inducement existed to fabricate. I confess this matter has given us much concern. I find in Mr. Branch's Penal Code, p. 111, the following statement: "Where defendant or his witness has been impeached or sought to be impeached by proof of contradictory statements, it is error to refuse to permit

defendant to sustain his own testimony or that of his witness by proof of statements similar to those testified to on the trial which were made shortly after the transaction and before any motive or inducement existed to fabricate." This statement is supported by a citation of twelve cases, and is true as a general proposition, and supported by these authorities on the general doctrine that a *witness* who has been sought to be impeached by statements made outside those made upon the trial, may introduce statements made to others that would tend to corroborate the statements made by him on such trial. That such statements thus sought to be introduced are self-serving can not be denied, but the rigidity of such a rule is relaxed provided such statements made by the witness occurred at a time when no motive to fabricate existed. The ruling in this instant case hinges on the above proviso and on account of the fact that a motive to fabricate existed at the time that this self-serving declaration was supposed to have been made to Mr. Orr, such was herein held to be inadmissible. If this rule is thus enforced it necessarily results in depriving all accused persons of its benefits. A motive to fabricate always exists so far as a defendant is concerned; the moment the offense is committed, and outside of the res gestae, the enforcement of such rule would mean that an accused could never combat any attempted impeaching and contradictory statements to the one made at the trial, by his self-serving declarations to the contrary of the statements used in the effort to impeach him.

It was held in Hudson v. State, 49 Texas Crim. Rep. 25, 90 S. W. 177, in substance, that where a boy, charged with rape, testified on the stand that he was fourteen years old, the State in rebuttal thereof placed two officers upon the stand who testified that upon Hudson's arrest he told them he was sixteen years old, and Hudson then offered the county attorney who heard Hudson's statement before the grand jury before whom he had testified, and alleged that such attorney's testimony would be that he told the grand jury that he was fourteen years of age at the time of the commission of the offense. This Court held this testimony to be admissible, and no mention in such holding was made relative to the presence of a motive to fabricate.

In the Streight case, 138 S. W. 742, this Court said: "It is also well settled that, when a witness is sought to be impeached by proving contradictory statements, then such witness can be supported by showing that she made the same statement, as she makes on the trial, in a former recital of the matter. These

were the main witnesses for defendant, and this action of the court was very material error."

This Court has long ago held that where a State's witness has been impeached relative to some material testimony given by such witness upon the trial of the case, that the State had the right to attempt to bolster up such witness' testimony by showing that such witness had about the same time made to other persons statements similar to the ones made while testifying on the stand. The case of English v. State, 34 Texas Crim. Rep. 200, 30 S. W. 235, in an opinion by Judge Hurt, holds as follows: "Appellant complains of testimony to the effect that the witness gave on the night of the homicide a similar version of the facts attending same as sworn to by him on the trial. Appellant, before this, had made an attack upon him, by trying to prove that his evidence was recently fabricted. Under this state of case, the State had the right to sustain her witness by proving that just after the homicide her witness made the same statement in substance as that sworn to on the trial, and by this means disprove that his testimony was recently fabricated." This decision has been followed in Fondren v. State, 169 S. W. 428. If such rule should and does apply relative to a witness for the State, the same reliance should be had thereon in behalf of the accused.

Mr. Wharton in his work on Criminal Evidence, 10th Ed., Vol. 1, Sec. 491, page 1019, makes the following statement: "And where a witness has been impeached through contradictory statements, some states allow proof of consistent statements to re-establish his character. In those states the consistent statements are admissible whether under oath or not, and whether written or verbal, but the consistent statement must be relevant, and it must correspond in substance with the statement to be sustained. Such statements may be proved by any person who heard the corresponding statement." As to the states adopting such a rule, this State is listed by the following cases: Wallace v. State, 46 Texas Crim. Rep. 341, 81 S. W. 966; Lee v. State, 44 Texas Crim. Rep. 460, 72 S. W. 195; Hardin v. State, 55 Texas Crim. Rep. 631, 117 S. W. 974. These citations seem to support Mr. Wharton's text.

We quote from Hardin v. State, supra: "If the State proved that appellant made different statements from those sworn to on the trial of this case, then it would be permissible to show that the appellant made other statements in consonance with his statement here sworn to, * * *."

From the case of Williams v. State, 24 Texas Crim. App. 637, we quote the syllabus rather than a more lengthy paragraph of the opinion: "It is now a well settled rule of practice in this State that an impeached witness may be corroborated by proof that he had at other times made the same statements as those testified to by him on the trial, and about which he was impeached. Under this rule, it is held that the trial court erred in refusing to permit the defendant to introduce proof to support his impeached witness by showing that, prior to the trial, she made statements substantially the same as those she made on the trial and about which she was impeached."

This rule above announced has been consistently adhered to throughout the history of our early jurisprudence. We quote from Bozeman v. State, 34 Texas Crim. Rep. 507, 31 S. W. 389: "The appellant also contends that the court erred in refusing to permit the defendant to introduce the statement of Beulah Bozeman, the alleged injured party, made a few days after the alleged occurrence, in the preliminary examination. The State offered evidence in this case, the tendency of which was to impeach the testimony of said Beulah by showing declarations that she made, subsequent to the alleged occurrence, inconsistent with her testimony given at the trial. In such a case it was proper to have admitted the testimony taken before the magistrate in rebuttal of said impeaching testimony, and the court erred in excluding same.".

The case of Campbell v. State, 35 Texas Crim. Rep. 163, 32 S. W. 774, holds in substance that where the prosecution has introduced testimony of contradictory statements in order to impeach a defendant's testimony on the trial, defendant has the right in rebuttal to show by other witnesses that shortly after the transaction, a homicide, he had made statements to them consistent with his testimony on the trial.

I am aware of the fact that in an opinion by Judge Brooks in the Porter case, 50 S. W. 380, the doctrine of a motive to fabricate has been applied to an accused's testimony, and therein it was held that the motive to fabricate was present because of the arrest and incarceration of the defendant at the time of the making of the self-serving declaration. The same holding also appears in an opinion by Judge Harper in the Blackburn case, 180 S. W. 268, in which he attempted to distinguish the Hudson case, 49 Texas Crim. Rep. 24, 90 S. W. 177. From a reading of such case I am unable to say whether or not the Hudson case was intended to be overruled. I do say that

the Hudson case and further cases cited in an early paragraph hereof demand a clarification at least when read in the light of the Porter and Blackburn cases, supra, and that these two cases are the first time in our jurisprudence that I have been able to find the motive to fabricate limitation placed on this rule. That the motive to fabricate rule does not apply to an accused at least to such an extent that his self-serving declaration should be excluded as an effort upon his part to overcome an attempted impeachment by the State on a material matter, I think, is held, and I quote from the case of Hudson v. State, supra, in which Judge Davidson said: "The first bill was reserved to the refusal of the court to permit appellant to prove by District Attorney Baker that appellant testified before the grand jury that he would be 14 years of age on the 5th day of October, 1905. This assault should have occurred on the 3rd day of June, 1905. The reason for excluding this was that it was a self-serving declaration. Appellant took the stand, and testified in his own behalf that he was under 14 years of age, and that his birthday was October 3, 1905. This conviction occurred on the 28th of September, 1905. To meet this statement of appellant, witnesses Johnson and Irvine were placed on the stand, and testified that they had warned defendant, while they had him under arrest for this offense, and that, after such warning, he stated to them that he would be 16 years old his next birthday. Appellant was carried before the grand jury by the district attorney, and, when his counsel requested that they be permitted to talk and counsel with him before testifying, the court refused them permission; and he did testify before the grand jury, and among other things stated that he would be 14 years of age the following October. When he was impeached and contradicted by the statements of Johnson and Irvine, he ought to have been permitted to sustain himself by the statements made before the grand jury. These matters all occurred subsequent to the alleged transaction, and the testimony of Johnson and Irvine was used to contradict and impeach his testimony on the trial. His statement before the grand jury, then, should have been permitted to go in, to show that he had made the same statements out of court that he had made in court, and to meet the effect of the statements of Johnson and Irvine. The State also proved by Dock Wallace that defendant had told him last winter that he would be 16 years of age his next birthday. The rejected testimony was practically of the same character as that offered by the State; that is, statements of defendant contrary to his testimony on the trial. The statements made before the grand jury were confirmatory of his testimony on the trial, and practically

of the same class of testimony. It should have been permitted to go to the jury, along with the impeaching statements."

I think the rule relative to a motive to fabricate should not be held to apply to a self-serving declaration upon the part of an accused because of the fact that it is palpably evident that his motive to fabricate necessarily arises at the moment the offense is committed and the res gestae ceases to operate. He could never avail himself of the rule herein sought to be invoked, and would of necessity be deprived of what has been found to be a salutory rule. The effect of a contrary holding would be to allow the exception to the rule to destroy the rule in so far as it affects an accused.

I do think, however, that such a rule relative to a motive to fabricate should be held not to apply to the accused, because of the fact that it would inevitably work an injustice upon such accused to the extent of depriving him of any attempt to fortify his impeached statement on account of the fact that his motive to fabricate was born at the same time the offense was committed.

I think that the fairer and safer rule would be that where a defendant has been impeached by a showing that he has made other and different statements than the one made by him while on the stand, then he would have the right to show that at about the same time that he was said to have made the disserving statement, he made other statements in consonance with the statement made by him on the trial of the case.

To hold otherwise I think deprives him of the right to sustain himself when impeached by statements made outside the trial of the case because of the fact that his motive to fabricate exists immediately upon the commission of the offense, and unless this rule is relaxed to the above suggested extent, he can never endeavor to retrieve his standing before the court by showing similar statements made by him corroborative of the statement made while on the stand.

I am further of the opinion that we were in error in our original opinion herein where it was held that no error was shown in bill of exceptions No. 7. I think the exclusion of Mr. Orr's testimony was error, and of sufficient gravity to cause a reversal of this cause.

I therefore respectfully enter my dissent.