**Louis King CAMPBELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1018–84.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

---

2. The jury was properly charged on the law of parties.

John J. Browne (court appointed), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr. and Jan Krocker, Asst. Dist. Attys., Houston; Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was indicted and convicted by a jury for the offense of murder. See V.T.C.A. Penal Code, § 19.02. The jury assessed punishment at life imprisonment in the Texas Department of Corrections. Appellant urged seven grounds of error in his appeal to the First District Court of Appeals in Houston, but the Court of Appeals affirmed his conviction in an unpublished opinion. *Campbell v. State*, No. 01–83–0755–CR (August 23, 1984). By petition for discretionary review to this Court, appellant raised five grounds of review. We granted appellant's petition on grounds of review four and five, which claim that the trial court erroneously allowed the prosecution to bolster the testimony of its witness, Ms. Oakreter Jackson, by evidence of prior consistent statements. We will reverse the judgment of the Court of Appeals.

Appellant killed the deceased in appellant's front yard on Saturday night, July 2, 1983, by striking him in the head with a heavy object. The people at the scene and appellant's neighbors did not volunteer any information to the officers investigating the homicide. One month later, however, the police were informed by the Crime Stoppers Program that Jackson was a witness, and Jackson subsequently gave statements to the police.

Jackson was the State's eyewitness at trial. She testified that she was on the porch of the house across the street when an argument began between appellant and the deceased, evidently over some lawnmowers belonging to the deceased that appellant had sold. Jackson stated that appellant was handling an iron bumper jack during the argument, and that when the deceased turned to walk away, appellant struck him from behind with the jack. The deceased started to turn and face appellant, when appellant struck him again in the forehead, fatally wounding him. Jackson testified that appellant then removed an envelope from the deceased's shirt pocket (the envelope purportedly contained money that the deceased had shown to appellant during the argument), went into his house to change his clothes, and left the scene.

Appellant and two eyewitnesses for the defense testified to a different version of the incident. They said that there was no argument about lawnmowers, that the deceased brandished a knife, that the blow was delivered by a piece of lumber that appellant picked up in the yard in response to this provocation from the deceased, that the deceased was threatening to get a gun when appellant struck him (only once), and that they did not see Jackson around the scene at all. Appellant's entire case turned on self-defense, which his witnesses supported and Jackson refuted. The jury apparently believed Jackson.

After Jackson testified for the State on direct examination, the defense attorney opened a number of avenues of impeachment on cross and recross examination. Jackson testified that she had never been intimately involved with appellant, which was refuted by defense witnesses, that she had not been convicted of any crimes involving moral turpitude, which was refuted by a conviction for theft, and that she had never used the name "Broadway," which was also refuted by the documents show-

ing her conviction. The defense attorney also asked her if she had been paid for the reporting of the crime, and if so, when and how much. She stated that she had been paid one month after giving the information.

Jackson was later returned to the stand to rehabilitate herself by describing why she did not realize she had actually been convicted, and by stating that she did not think that the defense attorney had used the exact name "Broadway" when questioning her on that issue. The State also elicited her testimony that she received the $400.00 from the Crime Stoppers Program in September, a month and a half after her initial statements to the police were made, and that she was not receiving any additional money for testifying at the trial.

Detective Osterberg, the last witness called, testified for the State on rebuttal. Over objection, he was asked about his three prior conversations with Jackson that began with her approaching him through Crime Stoppers. He testified that she said the "same things" in each conversation or statement, and that "[s]he has never changed her story. It has always been the same."

During closing argument, the defense attorney referred to Jackson as "the four hundred dollar witness," and said, "here they want you to believe a woman who a month later turns in a man for four hundred dollars...." The prosecutor responded in closing argument by stating that Jackson was a believable witness because "she told Detective Osterberg the same thing each time she talked to him." Defense counsel's objection to this statement was sustained over the prosecutor's argument that what the prosecutor alluded to was in evidence.

■ Appellant's grounds of review numbers four and five complain that the Court of Appeals erred: (a) in holding that the prosecutor's bolstering of Jackson was not improper and did not constitute reversible error; and (b) in holding that the trial court's admission of evidence over objection of Jackson's prior consistent state-

ments, when no predicate had been laid for the admission of such evidence, was proper. In response to the latter, we must answer two questions regarding the admissibility of prior consistent statements:

> 1) whether the predicate for such statements was laid in this case; and

> 2) whether such statements were admissible although they were made at a time when the motive to fabricate was present.

The prevailing rule for criminal cases in Texas is set out in *Rains v. State*, 146 S.W.2d 176, 178 (Tex.Cr.App.1940):

> "In *Browney v. State*, 128 Tex.Cr.R. 81, 79 S.W.2d 311, 315, the rule is stated as follows: 'It is well settled that where a witness has been impeached by showing that he made other and different statements in regard to the matter than those testified to by him on trial, he can be supported by showing that he made similar statements to those testified to by him recently after the occurrence. However, if the supporting statement was made after a motive or inducement existed to fabricate, the supporting statement is inadmissible.'"

On Motion for Rehearing, this Court in *Rains*, supra, thoroughly reviewed Texas precedent, found that the above-stated rule has been consistent from the beginning, and reaffirmed it. *Id.* at 179–180.

Under this rule, appellant makes a strong case on both counts: that there was no predicate laid that Jackson made prior inconsistent statements, which would open the door to evidence of prior consistent statements; and that the prior consistent statements about which evidence was admitted were made at a time when the motive to fabricate—the reward money—existed.

The Court of Appeals found against appellant on both issues. It held that the defense challenged Jackson's credibility by "implying that she had fabricated her story to collect the Crime Stoppers' reward and to get even with the appellant." *Campbell*, supra at 5. It continued, "[a]lthough

the statements by Ms. Jackson to the police investigator were given after she had received the Crime Stoppers' reward money [which is not strictly true, but close enough because the motivation was present when all the statements were made], that merely affected the *weight,* not the admissibility of the rehabilitation testimony." *Id.* (Emphasis and comment added.) The latter comment is a misstatement of the controlling rule, and we reverse the Court of Appeals for the reasons developed below.

■ With regard to the second question, admissibility of the statement after the predicate is laid, our holding on this issue follows the precedent set out in *Rains,* supra at 178.

> " ' ... [I]f the supporting statement was made after a motive or inducement existed to fabricate, the supporting statement is inadmissible.' "

Prior consistent statements then are not admissible if they were made after the motive for fabrication came into existence.

It is appropriate at this juncture to examine the continued viability of *Rains,* supra, in light of the recent promulgation of new rules of evidence in Texas. On December 18, 1985, this Court promulgated the new Texas Rules of Criminal Evidence [cited as Tex.R.Cr.Evid.], which were effective on September 1, 1986. Germane to this case is the rule regarding a witness' prior consistent statement, set forth in Tex.R.Cr. Evid. 801(e)(1), which states that a statement is not hearsay if:

> ... The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive,....

This rule is simply a codification of well established Texas caselaw.* Under the

new rule of criminal evidence or under Texas caselaw, a proper predicate for admission is laid when the witness testifies at trial and is subject to cross-examination about the statement and there has been an express or implied charge against him of recent fabrication or improper influence or motive. In the instant case, the witness Jackson did testify, was subject to cross-examination and was expressly charged with improper motive and fabrication concerning the statement. Thus, a proper predicate for admission of the prior consistent statement was established.

With regard to the second question, the admissibility of the statement vis-a-vis the motive to lie, we note at the outset that Tex.R.Cr.Evid. 801(e)(1), supra, contains no requirement of admissibility that prior consistent statements be made before the time when the motive to fabricate arose. No Texas civil cases have been decided on this point since the adoption of the new Civil Rules of Evidence, but the requirement is strongly entrenched in prior case law. See *McInnes v. Yamaha Motor Corp., U.S.A.,* 673 S.W.2d 185 (Tex.1984); *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298, 301–303 (Tex.1962).

Federal courts interpreting the identical language have tended to incorporate the requirement of absence of motive to fabricate, the leading case being *United States v. Quinto,* 582 F.2d 224 (2nd Cir.1978). The court's discussion in *Quinto* supra, of the rationale for this rule is helpful to our analysis:

> "The rationale for excluding most, but not all, prior consistent statements being offered to establish the witness's credibility is one of relevance. 'The witness is not helped by [the prior consistent statement] even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it.' ... 'Prior

---

* In *Bilbrey v. State,* 594 S.W.2d 754, 759 (Tex.Cr. App.1980), this Court upheld the rehabilitation of a witness (Wichmann) because the defendant "attempted to impeach Wichmann upon bias and motive and to raise the inference that Wich-

mann's testimony was a recent fabrication based upon the State's offer of leniency." See also, 37 Tex.Jur.3d § 803 (1984), 62 Tex.Jur.2d § 319 (1965), and cases cited therein.

consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive.' ... But the prior consistent statements have been so admissible only when the statements were made prior to the time the supposed motive to falsify arose.... *Only then was the prior consistent statement 'relevant' on the issue of credibility;* that is, it tended to make the trustworthiness of the witness's in-court testimony more probable, after that testimony had been assailed, inasmuch as the consistency of the prior statement with the witness's testimony at trial made it 'appear that the statement in the form now uttered was independent of the [alleged] discrediting influence.' "

*Id.* at 232–233 (Emphasis added; citations omitted; bracketed words in the original.)

The court in *Quinto,* supra, went on to note that Fed.R.Evid. 801(d)(1)(B) [hereinafter Fed. Rule(s) ] altered the preexisting evidentiary law on the use of prior consistent statements, by allowing those statements that meet its standards to be used as non-hearsay "substantive evidence," to prove the truth of the matter asserted, rather than merely for rehabilitation. Notwithstanding the language of the rule, however, it held that the *standards* for admissibility are precisely the same as the traditional standards, which include the requirement that the prior consistent statement be made prior to the time that the supposed motive to falsify arose. *Id.* at 233–234.

Other federal courts have noted that *Quinto,* supra, and its progeny read this requirement into the Rule, while the Rule itself includes no such limitation upon admissibility for the purpose of corroborating an allegedly impeached witness' testimony. *United States v. Parodi,* 703 F.2d 768, 784 (4th Cir.1983); and *United States v. Harris,* 761 F.2d 394 (7th Cir.1985). See also, *United States v. Pierre,* 781 F.2d 329 (2nd Cir.1986); *United States v. Obayagbona,* 627 F.Supp. 329 (1985). These cases hold that *Quinto,* supra, was concerned only

with the application of Fed. Rule 801(d)(1)(B), supra, to prior statements as substantive evidence, and did not deal with their use for the more limited purpose of rehabilitation.

"Since the only mention of prior consistent statements in the Federal Rules of Evidence is in Rule 801(d)(1)(B) and this limits admissibility to cases where the statement 'is offered to rebut an express or implied charge against him of recent fabrication of improper influence,' lawyers and judges can be forgiven for being misled into concluding, as was done by dictum in *United States v. Quinto,* ... that the limitation applies to the use of prior consistent statements for rehabilitation as well as for direct evidence. However, analysis makes it clear that *Rule 801(d)(1)(B) simply does not deal with the extent to which prior consistent statements may be used for rehabilitation.*" (Emphasis added.)

*United States v. Rubin,* 609 F.2d 51, 68–69 (2d Cir.1979, Friendly, J., concurring), *aff'd.,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981), quoted in *Parodi,* supra at 785, n. 13.

This split in federal authority is confusing, and the cases (*Rubin, Parodi,* and *Harris,* supra, among others) that support the rule that motive to fabricate goes only to the weight and not to the admissibility of a prior consistent statement are of only limited assistance. Judge Friendly's underscored comment is difficult to accept in view of the plain language of the Rule, which certainly appears to contemplate rehabilitation. We are also confronted with the additional reference to prior consistent statements in Tex.R.Cr.Evid. 612(c), which limits admissibility of such statements to situations allowed by Tex.R.Cr.Evid. 801(e)(1)(B). The Federal Rules lack this provision, and the express absence of other references to prior consistent statements is relied upon in Judge Friendly's analysis.

■ When the new Rules of Criminal Evidence were promulgated, a decision was made to adopt the wording of Fed. Rule 801(d)(1)(B), supra, for Tex.R.Cr.Evid.

801(e)(1)(B), supra. The intent was to adopt not only the wording of the Federal Rule but its interpretation as well. The Federal Rule has been interpreted in *Quinto*, supra, to require that a prior consistent statement be made prior to the time there was a motive to testify falsely in order to be admissible, even though the statute does not explicitly set out this requirement. Therefore, the Texas rule will also include this requirement. This decision is more in keeping with the precedent laid down by this Court in *Rains*, supra, which shall remain intact.

■ In the instant case, Officer Osterberg testified about three prior statements made by Jackson that were all consistent with the testimony she gave at trial. There is no dispute that all three statements were made after Jackson was promised money in return for information. All the statements were made after Jackson had a motive to testify falsely. Therefore, none of them were admissible to rebut a claim of recent fabrication.

We therefore reverse the judgment of the Court of Appeals because of the error in the admission, over proper objection, of evidence of Jackson's prior consistent statements. Such error must of course be assayed for harm to the appellant, a task the Court of Appeals necessarily never reached in their disposition of these grounds of error.

The case is therefore remanded to the Court of Appeals for proper disposition not inconsistent with this opinion.

ONION, P.J., and McCORMICK, J., concur in the result.

TEAGUE, Judge, concurring.

This Court's court made evidentiary rule of law that is applicable and that controls the issue before this Court for it to resolve is set out in *Rains v. State*, 146 S.W.2d 176 (Tex.Cr.App.1940). Because it is set out in the majority opinion, it need not be repeated here. This evidentiary court made rule of law was in effect at the time when Louis Campbell, hereinafter referred to as the appellant, was tried and convicted, as well as being in effect at the time when this cause was submitted to this Court on October 16, 1985. Today, the majority opinion correctly reaffirms that evidentiary rule of law. I concur.

Neither the Federal Government, see Art. I, Section 9, Federal Constitution, nor any State Government, see Art. I, Section 10, Federal Constitution, shall pass any ex post facto law. The Texas Constitution contains a like provision: "No ... ex post facto law ... shall be made." See Art. 1, Section 16. As easily seen, there is not any limitation or qualification on what department of our State government will not enact an ex post facto law. "Literally, it [ex post facto] is only that a law shall not be passed concerning, and after the fact, or thing done, or action committed." *Calder v. Bull*, 3 Dall. 386 (1798).

I write only because the majority opinion contains dicta that might be construed as approving ex post facto laws. The majority opinion states the following therein: "It is appropriate ... to examine the continued viability of *Rains*, supra, *in light of the recent promulgation of the new rules of evidence in Texas.*" (My emphasis.) It is not. These rules did not become effective until September 1, 1986, by fiat of this Court on December 18, 1985. These rules, although rules, are "laws" of this State, see *Pannell v. State*, 666 S.W.2d 96, 102 (Tex. Cr.App.1984) (Teague, J., dissenting opinion), and cannot be applied to any cases pending on appeal because of the ex post facto clauses, either State or Federal. Because it is not necessary to invoke, apply, or discuss any of the new rules of criminal evidence in this cause, the majority opinion prematurely and unnecessarily interprets one of the new rules of criminal evidence.

It has long been axiomatic in these United States, and in this State, what Justice Bushrod Washington wrote almost 190 years ago in *United States v. Hall*, 2 Wash.C.C. 366, 373 (Fed.Cas. No. 15,285, 26 Fed.Cas., Cir.Ct.D.Pa.1809), and what Justice Samuel Chase stated in *Calder v. Bull*,

supra. In the former case, Justice Washington said: "An ex post facto law is one which, in its operation, makes that criminal or penal which was not so at the time the action was performed; or which increases the punishment; or, in short, which, in relation to the offense or its consequences, *alters the situation of a party to his disadvantage.*" (My emphasis.) Thus, any statutory or court made alteration of an evidentiary rule of law favorable to the defendant, enacted while a criminal case was pending on appeal, which would materially impair the right of the defendant to have the question of his guilt determined according to the law as it was when the offense was committed, would be an ex post facto law. In sum, alterations in the rules of criminal evidence, if unfavorable to a defendant, may amount to an ex post facto law. Also see *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898); *Kring v. Missouri,* 107 U.S. [17 Otto] 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883); The Constitution of the *United States of America: Analysis and Interpretation* (1973 edition). Just what alterations will be held to be sufficient to transgress the constitutional prohibitions cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). Happily in this instance it is not necessary for this Court to get embroiled in whether any of the new criminal rules of evidence violate the ex post facto clauses because the former evidentiary rule of criminal evidence, see *Rains v. State,* supra, controls the decision of this Court.

I further point out, but do so in reference to the rules of civil procedure, that the above principles of law have been approved and adopted by the Supreme Court of Texas, see *Federal Underwriters Exchange v. Lynch,* 168 S.W.2d 653 (1943); *Airline Motor Coaches, Inc., v. Fields et al.,* 166 S.W.2d 917 (1943), which held that where a case was tried before the effective date of the then Rules of Civil Procedure, questions raised on writ of error were required to be considered in light of principles of law then applicable. Also see *Goff v. Tuchscherer,* 614 S.W.2d 934 (Corpus Christi Civ.App.—1981), reversed, *Goff v. Tuchscherer,* 627 S.W.2d 397 (Tex.1982); *Livingston v. Gage,* 581 S.W.2d 187 (El Paso Civ.App.1979). As to the rules of civil evidence, see *Tramel v. Estate of Billings,* 699 S.W.2d 259 (Tex.App.—San Antonio 1985).

This Court has long adhered to the above principles of law. In *Plachy v. State,* 91 Tex.Cr.R. 405, 239 S.W. 979 (Tex.Cr.App. 1922), this Court stated the following: "It seems well settled in this state that a law which alters the rules of evidence applicable in a given case, so that under the law less or different testimony is required to convict the offender than was required at the time of the commission of the offense, must be held an ex post facto law, and not applicable upon the trial of one for an offense committed prior to the taking effect of such new enactment." (981). Also see *Hill v. State,* 171 S.W.2d 880 (Tex.Cr. App.1943); *The Constitution of the State of Texas: An Annotated and Comparative Analysis* (1977 edition).

For all of the above and foregoing reasons, I concur.