NO. 07-94-0317-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 29, 1995

_____

DONNA GUDGELL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY;

NO. CR-93J-149; HONORABLE DAVID WESLEY GULLEY, JUDGE

_____

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

Upon a not guilty plea, appellant Donna Gudgell was convicted of murder. The jury assessed her punishment at a $5,000 fine and thirty-five years confinement in the Texas Department of Criminal Justice, Institutional Division. In six points of error, appellant contends (1) the trial court erred in adding an affirmative finding to the judgment that she used a deadly weapon during the commission of the offense; (2) the trial court erred in admitting a hearsay statement of the accomplice witness as a prior consistent

statement; (3) the trial court erred in admitting her transcribed oral confession because there was no proper predicate for its admission; (4) the evidence was insufficient to corroborate the accomplice witness testimony; (5) the trial court erred in denying admission of an oral statement made by the District Attorney's Investigator, Arthur Gerringer to appellant's daughter; and (6) the trial court erred in admitting her transcribed oral confession because it was involuntary. We affirm.

For logical continuity, we will review the points of error out of their numerical sequence. In point of error two, appellant contends the trial court erred in admitting a hearsay statement of the accomplice witness as a prior consistent statement. We disagree.

The record shows that the deceased was appellant's husband, Bill Gudgell. They resided on a farm in a rural area of Deaf Smith County and had several children, Greg, Todd, Gwenna and Terri. Accomplice witness Chris Barron, who had resided with the Gudgells for several years as a foster child and farm worker, confessed to killing the deceased. Barron and appellant both testified that they had an affair for about seven years. Barron also had an affair with their daughter, Gwenna, in 1993.

Barron gave six recorded statements to various authorities prior to trial. Some of the first five statements were inconsistent with Barron's trial testimony as to appellant's

-2-

involvement in Bill's murder. However, the sixth statement, State's exhibit 17, was consistent with Barron's trial testimony. In State's exhibit 17, Barron reported that appellant was a party to Bill's death by promoting, encouraging, planning and aiding him to commit the murder.

Barron testified at trial that on September 11, 1993, he and appellant were at the Gudgell home. Appellant told Barron she was unhappy with her husband's treatment of her, and she would be happy if Bill was gone, a theme she had repeated previously. Appellant decided that she would turn on the barn light so when Bill returned home, Bill would go to the barn to turn the switch off. Appellant wanted Barron to shoot Bill when he went to turn off the light and before Bill entered their home.

As appellant and Barron made their plans, Bill was at a rodeo with Gwenna's children. Appellant and Barron believed Bill would be returning his grandchildren to Gwenna's house, so Barron telephoned Gwenna to determine when Bill was leaving her home and whether the grandchildren would be with him when he arrived at the Gudgell house. Gwenna notified Barron when Bill left her house for the Gudgell home.

When Bill arrived at the Gudgell home, he went to the barn to turn off the light. Although Barron was waiting with a gun to shoot Bill, Barron was emotionally unable to accomplish his task. Barron then returned to his room in the Gudgell house. Shortly

-3-

thereafter, appellant came to Barron's room and asked him about what had happened. Barron explained that he was unable to murder Bill. Appellant told Barron that he would have to kill Bill that day.

Barron then went back outside and shot through a window in the house and killed Bill, who was sitting inside the house at the kitchen table. After the deed was done, Barron went back inside the Gudgell house, and appellant agreed to give him five minutes to leave the house before she called 911.

Barron was cross-examined about his plea bargain with the State, which occurred about a week before appellant's trial. Barron agreed to testify against appellant in return for a thirty-five year sentence for Bill's murder.

After Barron was cross-examined by appellant's counsel, the State attempted to introduce State's exhibit 17 to establish that Barron's trial testimony was <u>consistent</u> with his sixth recorded statement, which was made to the District Attorney's investigator, Arthur Gerringer. Appellant objected on the grounds that the sixth statement was hearsay, inadmissible, and violated Rule "608."[1] In making the objection, appellant referred to Rule "608" as the rule the prosecutor had earlier quoted in objecting to two of Barron's first five statements in which appellant was not implicated.

---

[1]All references to the Rules are the Texas Rules of Criminal Evidence.

Appellant, however, was mistaken because the State had actually objected to the introduction of these two defense exhibits on the ground that Rule "612" prohibited their admission. The State had contended that since Barron had unequivocally admitted making the prior inconsistent statements while testifying at the instant trial, appellant was not entitled under Rule "612" to have those prior inconsistent transcriptions also admitted.

In explaining the State's position regarding State's exhibit 17, the prosecutor stated that Barron's prior consistent statement was admissible under Rules 612(c) and 801(e)(1)(B). Without further objection on any additional ground by appellant, the trial court admitted State's exhibit 17. Soon thereafter, upon defense counsel's request, the trial court admitted the five other transcriptions of Barron's tape recorded statements, which were made prior to State's exhibit 17, some of which denied any involvement by appellant.

A prior statement by a witness which is consistent with his trial testimony is generally inadmissible. Tex. R. Crim. Evid. 612(c). However, a prior consistent statement is admissible and not hearsay only if (1) offered to rebut an implied or express charge against a witness of recent fabrication or improper motive or influence, and (2) the consistent statement is made before the inducement or motive to fabricate existed. Campbell v. State, 718 S.W.2d 712, 715 (Tex.Cr.App. 1986).

An objection on the ground of "hearsay" is generally sufficient to preserve error. Lankston v. State, 827 S.W.2d 907, 910 (Tex.Cr.App. 1992). However, when there is nothing to establish that the accused was objecting because the prior consistent statements were made after the motive to fabricate had arisen, the objection is insufficient and nothing is preserved for review. Meyers v. State, 865 S.W.2d 523, 524-25 (Tex.App.--Houston [14th Dist.] 1993, pet. ref'd); Ray v. State, 764 S.W.2d 406, 410-11 (Tex.App.--Houston [14th Dist.] 1988, pet. ref'd.). This is so because there is nothing to place the trial court on notice that the prior consistent statement was objectionable on the ground it was made after a motive to fabricate existed. Id.; Accord Hulin v. State, 438 S.W.2d 551, 552 (Tex.Cr.App. 1969).

Here, appellant objected on the grounds that the transcription of the interview was hearsay and inadmissible. As modified by appellant's statement incorporating the prosecutor's former objection, appellant actually objected on the ground that the transcript's admission violated Rule "612" about prior inconsistent testimony. Under these circumstances, appellant's objections were inadequate to notify the trial court that Barron's transcribed interview occurred after Barron had a motive to fabricate the challenged statement. Moreover, nothing is preserved for review because appellant's three trial objections do not comport to his appellate objection that Barron had a motive to fabricate his prior consistent statement. Cravens v. State, 687 S.W.2d 748, 752

-6-

(Tex.Cr.App. 1985); Hulin v. State, 438 S.W.2d at 552. Consequently, point of error two is overruled.

In point of error four, appellant contends the evidence is insufficient to corroborate the accomplice witness testimony. We disagree.

The Texas Code of Criminal Procedure Annotated article 38.14 provides:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

To determine the sufficiency of the corroboration, we must eliminate from consideration the testimony of the accomplice witness and then examine the remaining evidence to ascertain if it tends to connect the defendant with the commission of the offense. Reed v. State, 744 S.W.2d 112, 125 (Tex.Cr.App. 1988).

It is not necessary that the corroboration directly link the accused to the crime or that it be sufficient in itself to establish guilt. Reynolds v. State, 489 S.W.2d 866, 872 (Tex.Cr.App. 1972). Independent evidence which generally tends to establish that an accomplice witness's version of the facts is correct, rather than the version given by the defendant, is considered corroborative, even if it concerns only a detail, as opposed to a substantive link between the defendant and the

-7-

commission of the offense. Beathard v. State, 767 S.W.2d 423, 430 (Tex.Cr.App. 1989). Even apparently insignificant circumstances sometimes afford satisfactory corroboration. Munoz v. State, 853 S.W.2d 558, 559 (Tex.Cr.App. 1993). The presence of the accused with the accomplice at or near the crime scene, when coupled with other circumstances, can be sufficient to corroborate the accomplice witness's testimony. Ayala v. State, 511 S.W.2d 284, 287 (Tex.Cr.App. 1974).

Here, after excluding all the evidence introduced through Barron, there is evidence that (1) appellant was present in the house when Bill was murdered; (2) she was having an affair with Barron; (3) Bill treated her like dirt and she wanted a new life; (4) appellant was calm after emergency medical personnel arrived at the crime scene, even offering one person refreshments; (5) appellant lied to the officers and her family about not knowing who killed Bill; (6) appellant wanted Bill "gone" or out of her life; (7) she had talked with others about being "free" from Bill; and (8) on one occasion, wished that Bill was dead and talked about making Bill's death look like an accident. In appellant's statement to Gerringer or in her trial testimony, (1) appellant admitted that she saw Barron holding a rifle just after Bill was shot and just before Barron left the Gudgell house; (2) she and Barron talked about killing Bill that day; (3) she did not believe Barron would kill Bill; (4) she stayed with Barron much of the day that Bill was murdered; (5) she had probably said something to the

-8-

effect that after Bill was dead, she and Barron would run the farm; (6) she acknowledged that she discussed with Barron that she would be in the bathroom when Bill got home and the "deed was gonna get done"; (7) she earlier decided that Bill was not going to be shot after he entered their home; (8) after the shooting, she told Barron she would give him five minutes to travel to Gwenna's house before notifying the authorities; (9) she acknowledged that she "guess[ed]" she and Barron planned the "particulars about what happened before [the murder]" but she did not "mean to be planning"; (10) she said that Barron had talked to Barron's stepfather about getting someone else to kill Bill; (11) she "went along with [Barron's] ideas"; (12) she possibly intended to be with Barron "[s]omeday . . . after everything died down"; (13) she knew Barron "was going to take a shot at" Bill; and (14) she "guess[ed]" she wanted Bill dead. Under these circumstances, Barron's testimony was sufficiently corroborated by non-accomplice evidence connecting appellant as a party with the murder of the deceased. Point of error four is overruled.

In point of error five, appellant contends the trial court erred in denying admission of a statement made by Gerringer to Gwenna during Gerringer's interview with Gwenna about the deceased's death. We disagree.

During cross-examination, appellant asked Gwenna about her interview with Gerringer regarding the murder. In this regard, the record shows:

Q. [BY DEFENSE COUNSEL]: So when you walked in . . . Gerringer's office, what happened? What transpired?

A. Well, I told him that I didn't believe [Barron] had done it.

Q. Did [Gerringer] get mad at you?

A. [Gerringer] told me in a very harsh voice that he had been an investigator for over 25 years and that he had no doubt that [Barron] was guilty.

Q. Did he start talking to you -- Did he say that he had been told by a lot of people that you hated your father [the deceased]?

A. Yes.

Q. Did he say that you knew [Barron] was going to kill your father?

[THE PROSECUTOR]: Your Honor --

A. Yes.

[THE PROSECUTOR]: -- I am going to object to that as hearsay.

THE COURT: Sustained.

Subsequently, appellant made the following offer of proof regarding Gwenna's testimony:

Q. [BY DEFENSE COUNSEL]: Okay. In any event, [Gwenna] you had a conversation with . . . Gerringer, right?

A. Yes, I did.

-10-

Q.    Did he accuse you of participating in your father's death?

A.    [Gerringer] informed me that he knew I knew about it.

Q.    And did [Gerringer] say that you knew [Barron] was going to kill your daddy?

A.    Exactly.

Q.    Did [Gerringer] say that he had been told by a lot of people that you hated your father?

A.    Yes, he did.

Q.    Did [Gerringer] essentially try to say that you were a guilty party?

A.    Yes, he did.

Q.    Now, was there a tape recording going when this occurred?

A.    Not that I knew of.

[DEFENSE COUNSEL]:  Your Honor, that is all that we have.

Where the trial court excludes testimony sought to be admitted by the defense and admits essentially the same evidence elsewhere, the error is cured even if the exclusion was error.  Gonzales v. State, 571 S.W.2d 11, 13 (Tex.Cr.App. 1978).  Here, the trial court sustained the State's hearsay objection to the question about whether Gerringer accused Gwenna of knowing that Barron was going to kill the deceased.  However, Gwenna answered the question affirmatively before the objection was sustained, and there was no instruction to disregard or strike the statement from the record. Hence, (1) the evidence underlying appellant's offer of proof was

-11-

actually already admitted before the jury prior to the trial court's ruling, and (2) the jury could have properly considered the unstricken testimony. Hence, the admission of essentially the same evidence cured any error.

For the first time on appeal, appellant contends that Rule 801(e)(2)(D) provides the basis for admission of Gwenna's excluded testimony about Gerringer's statements. However, we find the error was harmless beyond a reasonable doubt because (1) Gwenna's testimony on the issue was tenuous as to Gerringer's bias or appellant's guilt, (2) cumulative of other testimony already given by her, (3) the examination of Gwenna and Barron by the defense was relatively unrestricted, and (4) appellant tacitly admitted to guilt in her tape recorded confession. Tex. R. App. P. 81(b)(2); Shelby v. State, 819 S.W.2d 544, 546-47 (Tex.Cr.App. 1991).

Appellant also objects for the first time on appeal that the exclusion of the evidence deprived her of her rights to a fair trial under the 5th, 6th, and 14th Amendments to the United States Constitution and Article I, sections 10 and 19 of the Texas Constitution. Since these objections are raised for the first time on appeal, nothing is preserved for review. Gauldin v. State, 683 S.W.2d at 413. Consequently, point of error five is overruled.

By her third and sixth points of error, the appellant challenges the trial court's admission of a tape recording of an oral confession and interview with Officer Gerringer. First, we

-12-

will address the sixth point by which she asserts the trial court erred by admitting her tape recorded oral interview with Gerringer claiming her confession was involuntary.

The determination of whether an accused knowingly and voluntarily waived his rights is based on the totality of the circumstances surrounding the statement's execution.  Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984).  In order for a promise to render a confession involuntary, the promise must be shown to be:  (1) of some benefit to appellant, (2) positive, (3) made or authorized by one in authority, and (4) of such a nature as would be likely to influence the confessing party to report untruthful facts.  Sossamon v. State, 816 S.W.2d 340, 345-46 (Tex.Cr.App. 1991).  To establish the forth prong, the reviewing court must look to whether the promise induced the accused to admit to a crime that was not actually committed by the individual.  Id.

In this regard, we review some analogous cases.  The following are promises not likely to induce a defendant to speak untruthfully:  (1) a statement by an officer that certain individuals would not be arrested if they were not involved in the burglary or murder was not a promise likely to cause the defendant to untruthfully admit to a murder offense, Salazar v. State, 687 S.W.2d 502, 503-04 (Tex.App.--Dallas 1985, pet'n ref'd); (2) statements from the prosecutor (a) asking the defendant to give his version so things could be straightened out, and (b) telling the

-13-

defendant that he could probably go home thereafter, was not an incentive for the defendant to untruthfully confess to murder, Alvarez v. State, 649 S.W.2d 613, 620-21 (Tex.Cr.App. 1982), cert. denied, 464 US 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983); (3) unspecific offers to help a defendant are not likely to cause the suspect to make an untruthful statement, Dykes v. State, 657 S.W.2d 796, 797 (Tex.Cr.App. 1983); (4) offer to help wife and mother of defendant with charitable aid was not sufficient to induce suspect to confess to heinous crime, accord Muniz v. State, 851 S.W.2d 238, 253-54 (Tex.Cr.App.), cert. denied, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); and (5) a promise to the defendant that he would be allowed to see his girlfriend was not likely to induce an untruthful statement on his part.  Smith v. State, 779 S.W.2d 417, 427 (Tex.Cr.App. 1989).

Here, appellant acknowledged on the tape recording that she knew and understood her statutory warnings.  Gerringer advised appellant that she would not be arrested the day she talked to him. When appellant specifically asked if she would be arrested that night or the next day, Gerringer informed appellant that she would not necessarily be arrested but it depended on what she told him after she had received the warnings about her rights.  Gerringer promised appellant that she would not be arrested that day. However, Gerringer also explained that any arrest would depend on the information that she gave to him afterwards.  Gerringer explained that the prosecutor would make a decision regarding

-14-

whether she had some culpability in Bill's murder. Under the totality of these circumstances, the promise not to arrest appellant the day of her interview did not likely induce appellant to speak untruthfully and tacitly admit to aiding Barron in murdering Bill. Point of error six is overruled.

In point of error three, appellant contends the trial court erred in admitting a tape recording of her oral confession when there was no proper predicate for its admission. We disagree.

Gerringer interviewed appellant in his office on September 30, 1993. Gerringer said that appellant was a witness to the instant offense, came into his office voluntarily, and initially discussed the circumstances surrounding her husband's murder freely. When appellant made an incriminating statement during the interview, Gerringer stopped the interview and gave appellant verbal warnings and had her sign a written waiver of her rights. Appellant never signed a written confession.

Gerringer initially attempted to record the interview with appellant by using a recorder capable of recording from a standard sized cassette tape. After the first fifteen to twenty minutes of the interview elapsed, Gerringer noticed that the recorder was not recording the interview with appellant. Gerringer then switched to a micro-cassette tape recorder and recorded the remainder of the interview. The micro-cassette tape contained about an hour and forty-five minutes of his interview with appellant.

Gerringer acknowledged that (1) he was competent to record the conversation and operate the micro-cassette recorder, (2) he had subsequently listened to the tape and was certain that the taped confession was accurate, (3) he had the taped conversation transcribed, (4) the transcription was an accurate reflection of the interview with appellant, (5) there had been no alterations or changes to the tape, (6) the tape was maintained in the District Attorney's offices since appellant's interview, and (7) no one tampered with the tape. Gerringer identified his and appellant's voices as those on the tape.

Appellant objected because the tape had about a twenty minute gap since the first recorder did not function properly, and Gerringer "could" have made an offer of immunity during this gap. Soon thereafter, the trial court admitted the tape's transcription into evidence.

Rule 901(a) provides that when identification or authentication of evidence is necessary, the requirement for admissibility is met by evidence adequate to support a finding that the matter is what its proponent claims. Kephart v. State, 875 S.W.2d 319, 321 (Tex.Cr.App. 1994). The adoption of the Rule 901(a) superseded the seven prong test for the admissibility of sound recordings set forth in Edwards v. State, 551 S.W.2d 731, 733

(Tex.Cr.App. 1977). Leos v. State, 883 S.W.2d 209, 211 (Tex.Cr.App. 1994).

Here, Gerringer identified his and appellant's voices on the tape recording and said the recording was an accurate recording of their conversation. Under these circumstances, there was evidence that the challenged transcription was what the State claimed, and the transcription was relevant in that appellant's statements connected her to the offense. Additionally, minor gaps in audio recordings that are a result of accidental or technical problems that are sufficiently explained do not affect the trustworthiness and reliability of the evidence, nor render the tapes inadmissible. Ali v. State, 742 S.W.2d 749, 754-55 (Tex.App.--Dallas 1987, pet. ref'd)(electrical short causing recorder to "short out" did not render tape inadmissible); Gahl v. State, 721 S.W.2d 888, 896-97 (Tex.App.--Dallas 1986, pet. ref'd) (a jammed tape resulting in three to five minute gap did not render recording inadmissible); McEntyre v. State, 717 S.W.2d 140, 145-47 (Tex.App.--Houston [1st Dist.] 1986, pet. ref'd) (frequent interference caused by interruption from police radios and a seven minute gap in the tape recording did not render recording inadmissible).

On appeal, appellant also contends that (1) since the first device quit working, it was not capable of making a recording, (2) Gerringer failed to notice that the device was not working so he was incompetent to operate the equipment, and (3) her statement was

-17-

induced by Gerringer's promise not to arrest her. With regard to the first two contentions, nothing is preserved for review since these appellate contentions do not comport with the objection made at trial, Cravens v. State, 687 S.W.2d at 752, and these appellate objections are raised for the first time on appeal. Gauldin v. State, 683 S.W.2d at 413. With regard to the third claim, we have previously determined in our resolution of point of error six, that the confession was not involuntary because the promise made by Gerringer that appellant would not be arrested on the day of her interview was not likely to induce appellant into making an untruthful statement tacitly admitting involvement in Bill's death. Consequently, point of error three is overruled.

In point of error one, appellant contends the trial court erred in adding an affirmative finding to the judgment that she used a deadly weapon during the commission of the offense. We disagree.

If a party attempts to invite the court to make an erroneous ruling, and the court rules in accord with the request, the accused cannot complain of that error on appeal. Tucker v. State, 771 S.W.2d 523, 534 (Tex.Cr.App. 1988); Capistran v. State, 759 S.W.2d 121, 124 (Tex.Cr.App. 1982). The correct time to submit a special issue concerning the use of a deadly weapon is at the punishment stage of trial. Luken v. State, 780 S.W.2d 264, 268-69 (Tex.Cr.App. 1989).

Here, the punishment charge did not include a deadly weapon special issue. Appellant expressly stated that she had no objections to the jury charge. Soon thereafter, the prosecutor stated that it was his understanding that if the jury found appellant guilty as charged in the indictment, the trial judge was authorized to find that a deadly weapon was used in the instant offense. Defense counsel agreed with the prosecutor's expression of the law. The trial judge then declared that he would make the deadly weapon finding. Because appellant complains of error she invited the trial court to make, nothing is preserved for review. Consequently, point of error one is overruled.

Accordingly, the judgment is affirmed.


Carlton B. Dodson
Justice


Do not publish. Tex. R. App. P. 90(c).