**Duane HAMMONS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–05–00616–CR.**

Court of Appeals of Texas,
San Antonio.

Jan. 31, 2007.

Discretionary Review Granted
June 27, 2007.

Mark Stevens, San Antonio, for appellant.

Enrico B. Valdez, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

At some time in the 1990's, the complainant became friends with her church choir leader, Melanie Hammons. Mrs. Hammons introduced the complainant to her husband, defendant Duane Hammons. Defendant, who pastored at another church, became the complainant's church counselor. In October 1994, the complainant turned seventeen years old. Three years later, in 1997, she told her mother that she had sexual relations with defendant while she was a minor. After she told her mother, two meetings were held, first at the complainant's home and later at the Anderson Temple, to discuss the sexual encounters between complainant and her church counselor, allegedly while she was a minor. The complainant did not report the incidents to the police until 2002. Complainant then filed a civil suit against defendant and the church, but the suit was dismissed shortly before the criminal trial commenced. At the time of the criminal trial, complainant was twenty-seven years old.

Defendant was charged on eight counts of sexual assault and indecency with a child. At trial, defendant did not deny having sexual relations with the complainant; instead, he disputed her age at the time they had sex, arguing she was at least seventeen years old. A jury found defendant guilty on four counts of sexual assault and two counts of indecency with a child. The jury assessed punishment at ten years' confinement and a $10,000 fine, but

recommended that defendant be placed on community supervision for ten years. Defendant complains of his conviction in six issues on appeal.

## HEARSAY AND PRIOR CONSISTENT STATEMENTS

■ In his first two issues, defendant complains the trial court erred in overruling his hearsay objections to Samuel Iglehart's and Yvonne Bristow's testimony regarding out-of-court statements allegedly made to them by the complainant. We review a trial court's determination on the admissibility of evidence under an abuse of discretion standard. *See Wall v. State,* 184 S.W.3d 730, 743 (Tex.Crim.App.2006).

### 1. Yvonne Bristow's Testimony

After complainant testified, the State called the complainant's friend, Yvonne Bristow, and asked her whether the complainant spoke to her about an older man. Bristow responded: "Yes, she did." The State asked Bristow, "[C]an you tell me what [the complainant] would tell you in the beginning about this older man?" The following then occurred:

Defense: Hearsay, Judge. I object.

Prosecutor: Judge, under 801 *he has questioned this victim's credibility* on several issues, and that is a prior consistent statement; therefore, not hearsay. We would ask that the Court admit it. [Emphasis added.]

Court: Okay. I'll overrule the objection. Go ahead.

Bristow proceeded to testify that, while the complainant was a freshman in high school, she told Bristow that an older married man, who was affiliated with the church, liked her. When the State asked Bristow about what defendant had told the complainant about him liking her, defendant made a running objection to hearsay, which the trial court overruled. Bristow then testified that the man told the complainant that she was sexy and beautiful. Ultimately, Bristow testified, over defendant's hearsay objection, that the complainant told her she and the defendant had sexual relations.

### 2. Samuel Iglehart's Testimony

Samuel Iglehart, the Bishop of Anderson Temple, conducted a meeting to determine the relationship between the complainant and defendant. Numerous people attended the meeting, including the complainant and defendant. At trial, the State questioned Iglehart about the meeting and defendant complains of the following testimony:

Prosecutor: All right. And was it made clear to you during that time what her age was during the time—during the time that she says she was having sex—or Duane Hammons was having sex with her?

Defense: I'll object to that as calling for hearsay.

Prosecutor: Judge, at this time we'd ask that it be allowed as a prior consistent statement. *The defense has clearly questioned the credibility of [the complainant]* and has suggested that she is confused about her age. This comes in as nonhearsay under 801 and [a] prior consistent statement by the witness. [Emphasis added.]

Defense: I don't think she laid the predicate for that, Judge.

Prosecutor: The only predicate is that he did the initial questioning.

Court: Okay. I'll overrule the objection. You can answer.

The State then continued its questioning:

Q. The question was, when [the complainant] spoke to you-all at the meeting was she clear about her age when

Duane Hammons started having sex with her?

A. She was clear.

Q. Okay. And was she at that—when she talked to you about that, was it clear to you whether she was over 17 or under 17?

A. At the time we had that meeting, the only reason we were there was because she was under 17 at that time. [Defendant again objected on the basis of hearsay; the court overruled the objection, but allowed the defense a running objection.]

Q. All right. Bishop, you said that if she had been over 17 there wouldn't have been a reason to have a meeting. Why do you say that?

A. Because that [sic] if she had been considered an adult, there would have been nothing that we would have been able to do about it.

### 3. Analysis

▪▪ " 'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). Generally, hearsay is not admissible. *See* TEX.R. EVID. 802. A prior consistent statement is not hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." TEX.R. EVID. 801(e)(1)(B). While prior consistent statements are admissible to rebut a recent charge of fabrication, there are certain requirements that must be met. First, a proper predicate must be laid that illustrates a charge of fabrication has been made. *Campbell v. State*, 718 S.W.2d 712, 715, 717 (Tex.Crim.App.1986). Second, the prior consistent statement must have been made at a time before the declarant

had a motive to testify falsely. *Id.* At trial, the State argued defendant "questioned" the complainant's credibility, and as a result, the prior consistent statements were admissible. We disagree. "Questioning" a witness's recollection of events or dates through rigorous cross-examination does not equate to a charge of fabrication. To hold otherwise subjects all defendants who challenge the memory of prosecution witnesses to the improper admission of prior consistent statements.

On appeal, the State argues for the first time that Iglehart's and Bristow's statements were admissible under Rule 801(e)(1)(B) because defendant suggested recent fabrication and improper influence or motive by asking the complainant the following during cross-examination:

Defense: Well the dates mix you up, don't they?

Complainant: I know the place and I know the age I was. And I was underage.

Defense: You know that, right? *Your lawyer tell you that you knew that?* [Emphasis added.]

Complainant: No, he didn't have to tell me that.

According to the State, the defense suggested both recent fabrication and improper influence or motive because the question about the lawyer "made clear" defendant's implied accusation that the complainant's lawyer had supplied her with dates when she testified she was underage at the time of the sexual encounters. We disagree because the State's argument takes the above question out of context. Prior to the above question being asked, defense counsel had asked the complainant about her testimony given in a deposition in a civil trial arising from the same facts as the criminal trial. The complainant acknowledged she testified

during her deposition that she had not had any type of sexual relationship with defendant before September 15, 1993, one year later than she testified to at the criminal trial. But she explained—with no prompting or questioning from defense counsel—that her civil trial lawyer had given her that date. Because the complainant herself blamed her lawyer for the inconsistencies in her testimony, defendant was entitled to cross-examine her on who told her what dates to allege. Again, cross-examination that tests the memory of a witness does not rise to the level of a charge of recent fabrication or improper influence or motive.

We conclude the State failed to lay "a proper predicate ... that illustrates a charge of fabrication has been made." *See Campbell*, 718 S.W.2d at 715, 717. Thus, the trial court erred in admitting Iglehart and Bristow's hearsay testimony. Finding error, we next must examine the record to determine if the testimony harmed defendant.

■ The admission of a statement that is hearsay is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). Rule 44.2(b) requires us to disregard a non-constitutional error that does not affect a criminal defendant's substantial rights. TEX.R.APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex.Crim.App.2004). We may not reverse a defendant's conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Garcia*, 126 S.W.3d at 927. When making this determination, we consider everything in the record, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex.Crim.App.2001) (it is appellate court's duty to assess harm after a proper review of the record).

■ The State argues that the improper admission of Iglehart's testimony was rendered harmless because the same evidence was admitted via the complainant's testimony about her age. We acknowledge the general rule of law that improperly admitted evidence is rendered harmless when other properly admitted or unobjected-to evidence proves the same fact. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim.App.1999); *Miranda v. State*, 813 S.W.2d 724, 739 (Tex.App.-San Antonio 1991, pet. ref'd). However, we do not believe that general rule applies here. For Rule 801(e)(1)(B) to be invoked there will always be testimony from a declarant. Here, the declarant was the complainant who testified she was under seventeen years of age at the time of the sexual encounters. Also, for Rule 801(e)(1)(B) to be invoked there will always be a prior consistent statement proffered for the purpose of rebutting fabrication or improper influence or motive. Here, the prior consistent statement was offered by Iglehart who testified the meeting at the temple was held because complainant was under seventeen years of age at the time of the sexual encounters. Under the circumstances that must be present for Rule 801(e)(1)(B) to be invoked, applying the State's argument that the admission of Iglehart's testimony was rendered harmless because the same testimony came in through the complainant vitiates defendant's ability to show error. The State cannot rely on Iglehart's testimony to support the complainant's testimony and then rely on the complainant's testimony to render the improper admission of Iglehart's

testimony harmless.[1] Therefore, we conclude the admission of Iglehart's testimony was not rendered harmless solely because the same testimony came in through the complainant. Accordingly, we next examine the entire record to determine whether the error affected defendant's substantial rights.

■ Defendant did not deny having sexual relations with the complainant; therefore, the State was required to prove the complainant was under the age of seventeen at the time of the sexual relations in order to obtain a conviction. The only direct evidence of complainant's age came from the complainant herself. Complainant testified she was certain that the first sexual contact she had with defendant occurred at the Hampton Inn when she was fifteen years old. Two defense witnesses testified the Hampton Inn was not built until 1995, at which time complainant would have been seventeen years old. On the witness stand, the complainant said the defendant took her to the Ruby Inn in mid–1993 or maybe 1994 for a sexual encounter. However, in her statement to the police, the complainant said the defendant picked her up from Roosevelt High School and took her to the Ruby Inn in 1995. On cross-examination, she admitted she was almost eighteen years old when she attended Roosevelt, and that she was "not really good when it comes to dates and math and different things like that."

After the defense successfully established complainant's confusion over the dates, the State linked Iglehart's testimony regarding the complainant being underage to a "confession" made by defendant at the temple meeting:

Q. Now, after [the complainant] gave some information at this meeting, did you talk to Duane Hammons about what his view of the situation was?

A. I talked to Duane.

Q. And what did Duane Hammons tells you about [the complainant's] statement?

A. He just messed up.

Q. Okay. Did he admit that what she had said was true?

A. Well, he did that in the meeting.

Q. Okay. What did he say in that meeting?

A. He confessed that he did it.

In its closing, the State again linked Iglehart's testimony regarding the complainant being underage to defendant's "confession." The State began its closing arguments by emphasizing this "confession": "Ladies and gentlemen of the jury, Duane Hammons confessed. He confessed to Bishop Iglehart, Elder Stirrup, Elder Stewart. . . . He confessed in front of Elder Thompson, he confessed in front of [the complainant] in that meeting at the Anderson Temple."[2] The State then focused, not on the complainant's testimony, but on Iglehart's and Bristow's, and the State asked the jury to believe, not the complainant, but Iglehart. Finally, after briefly discussing the complainant's testimony, the State again returned to Iglehart's and Bristow's testimony before concluding its closing.

After deliberating for over ninety minutes, the jury sent out the following note: "We are in conflict that Mr. Hammons confess[ed] to the Bishop that he messed

1. For the same reasons, we also reject the State's argument with regard to Bristow's testimony.

2. Stirrup, Stewart, and Thompson did not testify at trial. However, another State's witness, Gerald Redwine, testified defendant confessed only to being "unfaithful to his wife" at a church meeting.

up by having sex with a *minor*. [Emphasis in note.] We are looking for the particular point that the DA was asking the Bishop about the meeting in the church." During discussions with the trial court about responding to the note, the State acknowledged the need to link defendant's "confession" to the complainant's statement to Iglehart that she had sex with defendant when she was a minor. The State argued:

> And once Cheryl [the court reporter] has it, you'll see, Judge, that, essentially, the State would like to include—well, as the Court is aware from having heard the evidence, there was never a statement by the defendant where he said, I had sex with [the complainant] when she was 14 or 15.

> What happened was that the bishop asked [the complainant], she gave her testimony, and then the bishop turned to the defendant and said, Is this true? So the State's belief is that for the answer—for them to have the answer to the question, they have to have some context as to the actual statement it was true, meaning the questions that come before and after that statement. . . .

> . . .

> Which is that she explicitly made clear that he had sex with her when she was a minor. If they don't have what she explicitly made clear when the bishop turns to Duane and says, Is this true, all that they are going to get is, Is this true? Yes. And it doesn't answer their question, because their question goes to, did he confess to her being a minor at the meeting, and the answer is yes, when the leadup questions are included in the text. The answer's completely ambiguous when the leadup questions are not included in the text.

The trial court asked the court reporter to read back to the jury Iglehart's testimony about the meeting at the temple, the complainant's age, and that defendant said "he messed up" and he "confessed that he did it." A little more than one hour later, the jury returned its verdict.

Our review of the record reveals that Iglehart's testimony was not only vital to the State's case against defendant, but also significant to the jury. And, although perhaps of lesser importance, it is also clear the State needed Bristow's testimony to bolster the complainant's testimony regarding her age. Thus, after a review of the record, we are unable to say with fair assurance that the erroneous admission of Iglehart's and Bristow's statements did not influence the jury or that their admission did not affect defendant's substantial rights. Accordingly, remand for a new trial is appropriate.

## OFFENSE AT TIME ALLEGEDLY COMMITTED

In his last three issues, defendant asserts his conviction must be reversed because the indictment alleged actions that were not an offense in 1992, 1993, and 1994.

### A. Sexual Assault

■ Defendant argues that counts three and four of the indictment did not constitute offenses in 1993 and 1994 because "it was not against the law in Texas to cause the mouth of a child to contact another's sexual organ until September 1, 1997." Count three alleged that in 1994, defendant "did intentionally and knowingly *cause the mouth of [complainant], a child, to contact the sexual organ of the said defendant.*" [Emphasis added.] Count four alleged that, in 1993, defendant "did intentionally and knowingly *cause the mouth of [complainant], a child, to contact*

*the sexual organ of the said defendant."* [Emphasis added.]

Counts three and four track the language of the current statute, which provides that a person commits the offense of sexual assault if the person intentionally or knowingly "causes the mouth of a child to contact the anus or sexual organ of another person, including the actor." Tex. Pen. Code Ann. § 22.011(a)(2)(E) (Vernon Supp. 2006). However, at the time of the alleged offenses the Texas Penal Code read: "A person commits the offense of sexual assault if the person intentionally or knowingly 'causes the penetration of the anus or female sexual organ of a child by any means; *causes the penetration of the mouth of a child by the sexual organ of the actor;* causes the sexual organ of the child to contact or penetrate the mouth, anus, or sexual organ of another person; or causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor.'" Act of June 19, 1987, 70th Leg., R.S., ch. 1029, § 1, 1987 Tex. Gen. Laws 3474 (emphasis added).

We agree with defendant, and the State concedes, the indictment, and the jury charge which tracked the indictment, was erroneous because it relied on the wrong version of the statute. However, because we resolve defendant's first two issues in his favor, we do not address whether defendant was harmed by this error.

**B. Indecency with a Child**

 Defendant also contends the conduct of indecency with a child as described in count seven of the indictment was not an offense at the time it was allegedly committed. The indictment alleged that defendant "did then and there intentionally and knowingly engage in sexual contact with [complainant]...by ... causing [complainant] to touch part of the genitals of the said defendant, with the intent to arouse and gratify the sexual desire of any person." According to defendant, the Texas Penal Code does not proscribe this conduct. Defendant relies on Texas Penal Code section 21.01, which defines "sexual contact" as "any touching of the anus, breast, or any part of the genitals *of another person* with intent to arouse or gratify the sexual desire of any person." Tex. Pen.Code Ann. § 21.01 (emphasis added). Therefore, defendant contends the allegation that he caused the complainant to touch *his own* genitals does not charge indecency with a child.

We construe the phrase "another person" to mean any person other than the actor. Here, the "actor" was the complainant. By causing complainant to touch part of his genitals, defendant engaged in sexual contact with the complainant. *See Jacquez v. State,* 579 S.W.2d 247, 249 (Tex. Crim.App.1979) (noting that "[b]y grabbing the complainants and forcing them to 'touch and scrub' appellant's penis, appellant engaged in sexual contact with the complainants."); *In re J.S.,* 35 S.W.3d 287, 293 (Tex.App.-Fort Worth 2001, no pet.) (holding that defendant engaged in sexual contact "by rubbing L.Z.'s buttocks with [defendant's] penis"). Accordingly, count seven properly alleged conduct that constitutes the offense of indecency with a child.

**CONCLUSION**

We reverse the trial court's judgment and remand for a new trial.[3]

---

**3.** We decline to address defendant's third issue regarding the prosecutor's alleged com-

ment on his failure to testify because it is not dispositive to this appeal. TEX.R.APP. P. 47.1.